Robert A. Rosette (CA SBN 224437)
Geoffrey Hash (CA SBN 227223)
ROSETTE, LLP
193 Blue Ravine Rd., Suite 255
Folsom, California 95630
Telephone: (916) 353-1084
Facsimile: (916) 353-1085
rosette@rosettelaw.com
ghash@rosettelaw.com

Attorneys for Plaintiffs,

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS**, a Federally recognized Indian Tribe; **CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY** a wholly owned, unincorporated entity of the Tribe,<br><br>Plaintiffs,<br><br>vs.<br><br>**GIFFEN TAN,** an individual; **JOYCE MARKLE,** an individual; **LARRY KING**, an individual; **TED ATKINS**, an individual; **JOHN AND JANE DOES 1-20**; **XYZ CORPORATIONS 1-20**,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Date:<br>Time:<br>Courtroom:<br><br>Honorable |

## INTRODUCTION

The Picayune Rancheria of the Chukchansi Indians, a federally recognized Indian tribe, ("the Tribe") and the Chukchansi Economic Development Authority ("CEDA" or "Authority"), a wholly owned unincorporated entity of the Tribe (the Tribe and CEDA are hereafter collectively referred to as the "Plaintiffs"), acting through and on the authority of the Tribal Council recognized by the United States on February 11, 2014 ("United States-Recognized Tribal

Council"),[1] move this Court for injunctive relief. Plaintiffs seek injunctive relief from the Court to prevent all persons, including, but not limited to, the Chukchansi Gold Resort and Casino's ("the Casino") management, which includes Interim General Manager Giffen Tan, Interim General Accounting Manager Joyce Markle, Interim Chief Financial Officer Larry King, Casino Director of Security Ted Atkins and certain unidentified individuals and entities whom will be identified through discovery (collectively referred to herein as the "Defendants"), from making, directing, or authorizing, in any fashion, any and all Tribal governmental distributions of Casino revenue to any person or entity that is not recognized by the United States as the Tribe.

Defendants will make, and have made, as recently as February 13, 2014, Tribal governmental distributions of Casino revenues to individuals who are not recognized by the United States in amounts that will quickly climb into the millions of dollars if not stopped immediately. In fact, Defendants' past and presently ongoing conduct provide Plaintiffs and this Court with reason to believe that Defendants will make additional distributions of Casino revenues in the very near future to entities or individuals who are not recognized by the United States as the Tribe. Such distributions are estimated to be more than $1,400,000.00 on a monthly basis, and, if issued to persons or entities not recognized by the United States as the Tribe, will violate the Indian Gaming Regulatory Act ("IGRA"), the Tribe's Gaming Compact with the State of California (the "Tribal-State Compact"), and the Tribe's Gaming Ordinance.

Any violation of applicable federal and Tribal laws constitutes an unlawful seizure of Casino and Tribal assets and will cause certain and severe harm to Plaintiffs' because assets of the Tribe are going to an unrecognized entity and, once disbursed, cannot be recovered. To be sure, courts have found that the seizure of tribal assets is sufficient, as a matter of law, to demonstrate irreparable harm for purposes of issuing a preliminary injunction. *See Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171-72 (10th Cir. 1998) (citing *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989) (holding that the seizure of tribal assets "significantly interferes with the Tribe's self-government").

---

[1] Comprised of the following individuals: Reggie Lewis, Dora E. Jones, Morris Reid, Chance Alberta, Nokomis Hernandez, Jennifer Stanley and Nancy Ayala

COMPLAINT FOR INJUNCTIVE RELIEF

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

It is beyond question that under the IGRA, the Tribal–State Compact, and the Tribal Gaming Ordinance, Defendants are prohibited from disbursing Casino revenues to individuals not recognized by the United States as the Tribe. Therefore, it is clear that Plaintiffs are likely to succeed on the merits of this dispute.  Because a disbursement to persons and entities not recognized by the United States will result in a permanent dispossession of Tribal assets—to the detriment of approximately 900 Tribal members—the balance of equities tips in favor of issuing injunctive relief.  For similar reasons, injunctive relief would be in the public interest, because by preventing further violations of federal law, the Court would be ensuring that Casino revenues are not misappropriated and are used for the purposes which Congress intended.

Injunctive relief is necessary to prevent irreparable harm from occurring.  Specifically, this Court must restrain Defendants, or any person or entity, from disbursing Casino revenue, which is earmarked for the Tribe, to any person or entity not recognized by the United States as the Tribe.

**PARTIES**

1. Plaintiff Picayune Rancheria of the Chukchansi Indians is a federally recognized Indian Tribe, located in Coarsegold, California.

2. Plaintiff the Chukchansi Economic Development Authority is a wholly owned, unincorporated entity of the Tribe operating as an arm of the Tribe.  CEDA owns and operates the Casino.

3. Defendant Giffen Tan is the Interim General Manager of the Casino.

4. Defendant Joyce Markle is the Interim General Accounting Manager of the Casino.

5. Defendant Larry King is the Interim Chief Financial Officer of the Casino.

6. Defendant Ted Atkins is a management employee of the Casino, believed to be acting as the Director of Security.

7. Defendants John and Jane Does 1-20 and XYZ Corporations 1-20 are certain unidentified individuals and entities who will be identified through discovery.

…

…

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1362, in that the issues before this Court raise several federal questions and are brought by a federally recognized Indian tribe. Additionally, the district court has jurisdiction over "any cause of action initiated by a State or Indian tribe to enjoin class III gaming activity located on Indian lands and conducted in violation of any Tribal–State compact" pursuant to IGRA, 25 U.S.C. § 2710(d)(7)(A)(ii).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant(s) reside in or operate in this District and have committed a substantial part of the acts alleged in this District.

**FACTUAL ALLEGATIONS**

10. The Tribe is a federally recognized Indian tribe with the powers of sovereignty, self-governance, and governmental decision-making. The Tribe is governed by a Constitution adopted in 1988, along with various duly-enacted ordinances, regulations, policies, and bylaws. The Tribe's Constitution grants the seven-member Tribal Council broad governing authority to carry out its powers.

11. On or around June 15, 2001, the Tribal Council passed Resolution No. 2001-11, which enacted an ordinance establishing and governing CEDA (the "CEDA Establishing Ordinance"). The CEDA Establishing Ordinance sets forth the composition of the Board of Directors of CEDA (the "CEDA Board") as the sitting members of the federally-recognized Tribal Council. Thus, the members of the CEDA Board and the Tribal Council are identical.

12. The CEDA Establishing Ordinance granted CEDA the power to own and operate the Casino, which opened in 2003 for the benefit of the Tribe and its membership.

13. Defendants, individually and collectively, as Casino Management, have a duty and responsibility, expressed in part as a fiduciary duty, to ensure that the Casino is run responsibly and in compliance with all applicable laws. A breach of such duty would include Defendants' act of disbursing Casino revenue which is earmarked for the Tribe to any person or entity that is not recognized by the United States as the Tribe.

14. For any persons or entities to lawfully conduct Class III gaming pursuant to IGRA, such persons or entities must be an Indian tribe as that term is defined under the Act. Specifically, the IGRA defines an Indian tribe as "any Indian tribe, band, nation, or other organized group or community of Indians which, (A) is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians, and (B) is recognized as possessing powers of self-government." 25 U.S.C. § 2703(5).

15. IGRA also provides that an Indian tribe is required to "have sole proprietary interest and responsibility for the conduct of any gaming activity. 25 U.S.C. § 2710(b)(2)(A).

16. IGRA further requires that net revenues from any tribal gaming are to be used for only the following purposes: (1) to fund tribal government operations or programs; (2) to provide for the general welfare of the Indian Tribe and its members; or (3) to promote tribal economic development.[2] *See* 25 U.S.C. § 2710(d).

17. The IGRA requires Class III gaming to be conducted in compliance with the Tribal–State Compact, 25 U.S.C. § 2710(d)(1)(C).

18. Section 6.1 of the Tribe's Tribal-State Compact requires that gaming activities comply with "all rules, regulations, procedures, specifications, and standards duly adopted by the Tribal Gaming Agency." (A true and correct copy of the Tribe's Tribal-State Compact is attached as Exhibit A to the Lewis Affidavit.)

19. Section 1.3 of the Tribal Gaming Ordinance requires that the Tribe must regulate and control all gaming activity and further requires that all revenues must be used exclusively for the benefit of the Tribe. (A true and correct copy of the Tribe's Tribal Gaming Ordinance is attached as Exhibit B to the Lewis Aff.)

20. On February 11, 2014, the Bureau of Indian Affairs, a federal agency of the United States Department of the Interior ("BIA"), issued a decision, recognizing the following persons as constituting the legitimate and authorized Tribal Council with whom the United States would

---

[2] Other permissible purposes pursuant to IGRA include donation to charitable organizations or; helping fund operations of local government agencies. 25 U.S.C. § 2710(d).

maintain government to government relations: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez. In issuing this decision, the United States recognized that

> the dispute over the Tribe's leadership has led to multiple financial hardships including reported defaults on loans connected with the Tribe's gaming facility. In addition, many Federal agencies have been unable to determine with whom to conduct business amidst the dispute, causing essential Tribal programs that are funded by the Federal government to cease operation . . . Due to these increasing issues, there appears to be several grounds for finding it would be in the public interest to put this decision into immediate effect."

("United States Decision"). A true and correct copy of the United States Decision is attached as Exhibit A to the Affidavit of Robert Rosette Regarding Notice Of/Ex Parte Emergency Application and Motion for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, filed herewith ("Rosette Aff.").

21. On February 19, 2014, and citing those same exigent circumstances and additional exigent circumstances including alleged concern that "immediately following the Regional Director's issuance of [the United States Decision], counsel for the Ayala Faction communicated his concern that any attempt by the Tribal Council recognized in the [United States Decision] to resume control of the Tribal Offices and/or Casino could possibly *result in murder*," the BIA filed its Request to Make February 11, 2014 Decision Effective Immediately with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Indian Appeals ("United States Request"). A true and correct copy of the United States Request is attached as Exhibit B to the Rosette Aff.

22. Regardless of any challenges which have or may be raised with regard to the United States Decision, it is and remains the only position that has been articulated by the United States regarding the Tribe's legitimate governing body. Moreover, the exigent circumstances cited by the United States in its Decision and now in its United States Request are many of the same exigent circumstances that compel issuance of the relief sought through this action. Rosette Aff. ¶ 5.

23. Most recently, Defendants have refused to acknowledge and adhere to the directives of the United States-Recognized Tribal Council. Rosette Aff. ¶ 10.

24. Defendants have made and will make unlawful payments of Casino funds intended for the Tribal government to persons or entities not recognized by the United States as the Tribe.

25. Specifically, on February 13, 2014, Defendant Markle used Casino Revenues in attempting to make (and likely successfully making), a cash payment totaling $316,700 to an unauthorized entity acting at the direction of a rogue group that has never been recognized by the United States Government.

26. Defendants cannot show that their disbursement of Casino revenue has been issued to an Indian tribe as that term has been defined under the IGRA.

27. Defendants will make unlawful distributions of Casino revenues to persons and entities that are not recognized by the United States as the Tribe entitled to conduct class III gaming operations under IGRA.

28. Despite knowing that those persons and entities to which they have disbursed Casino revenue are not an Indian tribe as defined under IGRA, Defendants have and will continue to act in explicit contravention with this fundamental requirement of IGRA.

29. Unless Defendants are enjoined from issuing payments of Casino funds intended for the Tribal government, in violation of Tribal and federal law to persons or entities that is not recognized by the United States as the Tribe, Plaintiffs will lose the assets of the Tribe to an unrecognized entity and, once disbursed, those assets cannot be recovered.

**FIRST CAUSE OF ACTION**

**Injunctive Relief – IGRA**
**(Direct Violation)**

30. Plaintiffs reallege and incorporate by reference paragraphs 1 through 29 above.

31. By failing to deposit all Casino revenue into the Casino's bank account Defendants have violated, and without this Court's order restraining them, will continue to violate IGRA.

32. Although Defendants, as Casino management, should be well-aware that Class III gaming is legally authorized only when an Indian Tribe, as that term is defined, is conducting

…

such gaming activity, they facilitate operation of the Casino on behalf of persons and entities who have not been recognized by the United States as the Tribe.

33. Defendants likely disbursed such Casino revenues that are intended for the Tribal government on February 13, 2014 as described above, and will likely continue to disburse such Casino revenues to persons and entities who are not recognized by the United States as the Tribe, in violation of the requirements of 25 U.S.C. § 2710(d),

34. Defendants' unlawful disbursement of Casino revenues to persons or entities not recognized by the United States as the Tribe will harm the Tribe because those disbursements will be illegal and cannot be recovered.

35. If Defendants are permitted to continue to issue payments of Casino revenue intended for the Tribal government to any person or entity that is not recognized by the United States as the Tribe, such action will result in the loss of Tribal assets to an unrecognized entity and, once disbursed, those assets cannot be recovered

36. Plaintiffs' requested injunction is essential to prevent Defendants from committing illegal acts and improperly benefitting themselves and any person or entity that is not recognized by the United States as the Tribe.

37. Consequently, Plaintiffs are entitled to injunctive relief to prevent Defendants from further dispensing or issuing in any form of Casino revenue to any person or entity that is not recognized by the United States as the Tribe in violation of Tribal and federal law.

## SECOND CAUSE OF ACTION

### Injunctive Relief – IGRA
### (Indirect Violation via Violation of Tribal-State Compact and Tribal Gaming Ordinance)

38. Plaintiffs reallege and incorporate by reference paragraphs 1 through 37 above.

39. IGRA requires that all gaming and activities relating thereto must be conducted in conformance with the Tribal-State Compact and the Tribal Gaming Ordinance. *Id.* at § 2710(d)(1).

…

…

40. The Compact between the Tribe and the State of California requires compliance with various sources of Tribal law. Specifically, it provides: "All Gaming Activities conducted under this Gaming Compact shall, at a minimum, comply with ***a Gaming Ordinance duly adopted by the Tribe and approved in accordance with IGRA***, and with all rules, regulations, procedures, specifications, and standards duly adopted by the Tribal Gaming Agency." Tribal-State Compact, § 6.1. (emphasis added).

41. The Gaming Ordinance mandates that "Gaming is regulated and controlled by the Tribe pursuant to the Compact, authorized by the IGRA, and the Net Revenues received by the Tribe from Gaming are used *exclusively* for the benefit of the Tribe." Tribal Gaming Ordinance at §1.3.2 (emphasis added).

42. If Defendants are permitted to continue to issue payments of Casino revenue intended for the Tribal government to any person or entity that is not recognized by the United States government as the Tribe, such action will result in the loss of Tribal assets to an unrecognized entity and, once disbursed, those assets cannot be recovered

43. Plaintiffs' requested injunction is essential to prevent Defendants from committing illegal acts and benefitting themselves and any person or entity that is not recognized by the United States government as the Tribe.

44. As a result of the foregoing, Plaintiffs are entitled to injunctive relief preventing Defendants from further dispensing or issuing in any form of Casino revenue to any person or entity that is not recognized by the United States government as the Tribe in violation of Tribal and federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

1. Injunctive relief enjoining all Defendants, their attorneys, agents, and employees from taking any action, direct or indirect, in facilitation, cooperation or otherwise, in making any Tribal governmental disbursements of Casino revenue in violation of Tribal and federal law to any person or entity other than that recognized by the United States as the Tribe.

…

2. For such other costs and further relief as the Court deems equitable and just.

Dated: February 19, 2014

RESPECTFULLY SUBMITTED,

ROSETTE, LLP

/s/ Robert A. Rosette
Robert A. Rosette
Geoffrey Hash
193 Blue Ravine Rd., Suite 255
Folsom, California 95630
Telephone: (916) 353-1084
Facsimile: (916) 353-1085

Attorneys for Plaintiffs