Robert A. Rosette (CA SBN 224437)
Geoffrey Hash (CA SBN 227223)
ROSETTE, LLP
193 Blue Ravine Rd., Suite 255
Folsom, California 95630
Telephone: (916) 353-1084
Facsimile: (916) 353-1085
rosette@rosettelaw.com
ghash@rosettelaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS**, a federally-recognized Indian tribe, and the **CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY**, a wholly-owned Tribal enterprise,<br><br>Plaintiffs,<br><br>vs.<br><br>**GIFFEN TAN**, an individual; **JOYCE MARKLE**; an individual; **LARRY KING**, an individual; **TED ATKINS**, an individual; **JOHN AND JANE DOES 1-20; XYZ CORPORATIONS 1-20**,<br><br>Defendants. | Case No.:<br><br>**AFFIDAVIT OF ROBERT ROSETTE REGARDING NOTICE OF/EX PARTE EMERGENCY APPLICATION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Dept: |

I, ROBERT ROSETTE, hereby declare as follows:

1.     I am over the age of eighteen, am competent and of sound mind, have personal knowledge of the facts set forth below and, if called as a witness, I can and will testify truthfully to each of the following.

2.     I represent the Picayune Rancheria of the Chukchansi Indians ("Tribe"), a federally recognized Indian tribe, and its wholly owned economic arm, the Chukchansi Economic

1

Rosette, LLP
Attorneys at Law
193 Blue Ravine Road
Suite 255
Folsom, California  95630

AFFIDAVIT OF ROBERT ROSETTE REGARDING NOTICE OF/EX PARTE EMERGENCY
APPLICATION AND MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

Development Authority ("CEDA"), which owns and operates the Chukchansi Gold Resort & Casino ("Casino").

3.      The Casino revenue is critical to fund the Tribe's governmental operations and the adequate provision of its essential services such as public safety, education, healthcare, and basic infrastructure essential to its members.  Any disbursement of Casino revenue to any persons or entities that are not recognized by the United States government as the Tribe's Tribal Council will result in a dollar-for-dollar loss of this critical funding for every dollar so disbursed.

4.      On June 18, 2013, Wells Fargo Bank, N.A., acting in its capacity as the trustee for the bondholders that made possible a 2012 refinancing of the Tribe's Casino, initiated suit against the Tribe and various Tribal entities for default of the Indenture, the contractual document which governs that 2012 Tribal Casino refinancing ("Wells Fargo Action").  In summary, the Indenture requires that the Tribe make periodic interest and other payments to the bondholders.  At the time of initiation of the Wells Fargo Action, the Tribe had, due to circumstances surrounding a February 2013 attempted coup by Tribal member Nancy Ayala and her supporters and the resulting disruption in Tribal governance, allegedly failed to make payments required by the Indenture. This case is entitled *Wells Fargo Bank, N.A., as Trustee v. Chukchansi Development Authority, et al.* (Index No. 652140/13), and is now pending in the Supreme Court of the State of New York ("NY Supreme Court").  Given that it was initiated on behalf of the bondholders, the Wells Fargo Action has focused on correcting the alleged default under the Indenture and providing the bondholders with other protective measures to prevent any further default under the Indenture.

5.      On February 11, 2014, the United States Bureau of Indian Affairs issued a decision, recognizing the following persons as members of the Tribal Council as of that time: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez.  The United States issued this decision, reasoning that "*the dispute over the Tribe's leadership has led to multiple financial hardships including reported defaults on loans connected with the Tribe's gaming facility.  In addition, many Federal agencies have been unable*

Rosette, LLP
Attorneys at Law
193 Blue Ravine Road
Suite 255
Folsom, California  95630

2
AFFIDAVIT OF ROBERT ROSETTE REGARDING NOTICE OF EX PARTE EMERGENCY
APPLICATION AND MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

*to determine with whom to conduct business amidst the dispute, causing essential Tribal programs that are funded by the Federal government to cease operation . . . Due to these increasing issues, there appears to be several grounds for finding it would be in the public interest to put this decision into **immediate** effect.*"  A true and correct copy of this February 11, 2014 United States Decision is attached hereto as Exhibit A– (emphasis added).  This United States Decision is significant insofar as it is the only position that has been articulated by the United States regarding the Tribe's legitimate governing body at the current time.  Moreover, the exigent circumstances cited by the United States in its Decision are many of the same exigent circumstances that compel issuance of the emergency relief sought through this action.

6.    On February 19, 2014, and citing those same exigent circumstances as well as additional exigent circumstances including alleged concern that "immediately following the Regional Director's issuance of [the United States Decision], counsel for the Ayala Faction communicated his concern that any attempt by the Tribal Council recognized in the [United States Decision] to resume control of the Tribal Offices and/or Casino could possibly ***result in murder***," the BIA filed its Request to Make February 11, 2014 Decision Effective Immediately with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Indian Appeals ("United States Request").   A true and correct copy of the United States Request is attached hereto as Exhibit B.

7.    On the evening of February 13, 2014, Plaintiffs' counsel Rosette, LLP provided Defendants' legal counsel Petti & Briones, PLLC written notice of Plaintiff's intent to file the instant ex parte motion for temporary restraining order on the afternoon of February 14, 2014.  Said notice was provided by electronic mail and fax, both of which forms of delivery were acknowledged and/or confirmed successful.  Said notice further stated that Plaintiff's counsel would provide Defendants' counsel with notice of any hearing set by this court in connection with this ex parte application, including the date, time and location of said hearing, upon receipt of the same from this Court.

…

Rosette, LLP
Attorneys at Law
193 Blue Ravine Road
Suite 255
Folsom, California  95630

3
AFFIDAVIT OF ROBERT ROSETTE REGARDING NOTICE OF EX PARTE EMERGENCY
APPLICATION AND MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

8.     On February 18, 2014, I received a letter from Mr. Colin West of Bingham McCutchen, LLP, outside legal counsel to Rabobank (*i.e.*, the bank that holds several Tribal Casino accounts for the deposit of Casino revenues pursuant to the Indenture described above in Paragraph 6.  A true and correct copy of this letter is attached hereto as Exhibit D.  This letter states Rabobank's position vis-à-vis various issues related to the United States Decision.  However, it also states in relevant part: "Also, we want to inform you of something that occurred *on Thursday, February 13*.  As you may know, Rabobank receives deposits through Garda for CEDA and others.  Yesterday, Loomis delivered to Garda *two bags of cash, totaling $316,017*, for CEDA.  There was no identification written on the bag, but a document inside it was labeled "*PRCI Tribal Gaming Commission 46575 Rd. #417 Coarsegold, CA*."  The branch manager of the Fresno Branch, Mr. Darrell Hyatt, contacted *Joyce Markle* to inquire about this deposit.  *She* said the money belonged to the Chukchansi Rancheria, and that the money was mistakenly delivered to Garda.  *She* directed Loomis to retrieve the money, and Loomis did."  (Emphasis added).  In other words, it appears that Joyce Markle intended to make, and likely ultimately made, a $316,017.00 cash payment to the "PRCI Tribal Gaming Commission" located at 46575 Rd. #417 in Coarsegold, California after issuance of the February 11, 2014 United States Decision.  This is problematic for at least two fundamental reasons.  First, issuance of cash payments in this manner is a violation of the Indenture as well as Casino Minimum Internal Control Standards, and therefore a violation of Tribal Law, the Tribal Gaming Ordinance, Federal Law, and the Tribal-State Compact.  Second, the alleged "PRCI Tribal Gaming Commission" located at "46575 Rd. #417" in Coarsegold, California is ***not*** acting under the authority or direction of the Tribal Council recognized most recently by the United States via the February 11, 2014 United States Decision, and is instead believed to be operating under the direction of a rogue faction that has never been recognized by the United States.

9.     Based on the above, I am informed and believe that Defendant Giffen Tan has been working with other Casino management—Defendant Joyce Markle, Defendant Larry King, and Defendant Ted Atkins— to distribute Casino revenues to persons or entities that are not

Rosette, LLP
Attorneys at Law
193 Blue Ravine Road
Suite 255
Folsom, California  95630

4

AFFIDAVIT OF ROBERT ROSETTE REGARDING NOTICE OF EX PARTE EMERGENCY
APPLICATION AND MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

recognized by the United States government as the Tribe, or acting under the authority of entities recognized by the United States government as the Tribe.

10.     Plaintiffs have reason to believe that Defendants plan, at any time, to make additional distributions of Casino revenues to persons or entities that are not recognized by the United States government as the Tribe's Tribal Council.  For example, the very Tribal Council recognized by the United States on February 11, 2014 issued directives to Defendants on February 13, 2014, relating directly to the lawful handling of Casino revenues.  Defendants have not complied with such directives.  As a point of fact, in response to these requests, Defendants' legal counsel - on February 14 and 17, 2014 – represented that Defendants did not, at this time, intend to comply with any requests made of Defendants by the Tribal Council recognized by the United States on February 11, 2014.  Defendants' ongoing failure to take direction from the only Tribal Council currently recognized by the United States is all the more concerning in light of Defendants' actions of February 13, 2014 as described above in Paragraph 7, and given the fact that the anticipated ongoing distributions are estimated to be more than $1,400,000.00 each, all in direct contravention of the Indian Gaming Regulatory Act, the Tribe's Gaming Compact with the State of California (the "Tribal-State Compact"), and the Tribe's Gaming Ordinance.

11.     Unless Defendants are enjoined from issuing payments of Casino funds in violation of Tribal and federal law to any persons or entities that are not recognized by the United States government as the Tribe, Plaintiffs will lose the assets of the Tribe to an unrecognized entity and, once disbursed, those assets cannot be recovered.

12.     There is good cause to believe that if an emergency temporary restraining order is not issued forthwith, a real, significant and immediate risk exists that millions of dollars of Casino revenue will be disbursed without authority and as such will be lost forever.

13.     Emergency relief, in the form of a temporary restraining order, is necessary and must not be delayed for any period of time because there is good cause to believe that any further delay in granting this requested emergency relief will accelerate Defendants' illegal

…

5

Rosette, LLP
Attorneys at Law
193 Blue Ravine Road
Suite 255
Folsom, California  95630

disbursements of Casino revenue to persons and entities that are not recognized by the United States government as the Tribe.

14.     Attached hereto as Exhibit C is a true and correct copy of excerpts of an official transcript from a September 11, 2013 hearing held before the New York Supreme Court, Index No. 652140/13, in the matter styled, *Wells Fargo Bank, N.A. as Trustee, v. Chukchansi Economic Development Authority, et al.*, evidencing the NY Supreme Court's focus on the bondholders, and its refusal to exercise jurisdiction over, let alone finally resolve, the matter of to whom the Casino should issue "Excluded Assets" payments.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on this 19th day of February, 2014, in Chandler, Arizona.

Dated:  February 19, 2014                              RESPECTFULLY SUBMITTED,
                                                       ROSETTE, LLP


                                                       /s/ Robert A. Rosette
                                                       Robert A. Rosette
                                                       Geoffrey Hash
                                                       193 Blue Ravine, Ste. 255
                                                       Folsom, CA  95630
                                                       (916) 353-1084
                                                       (916) 353-1085

                                                       Attorneys for Plaintiffs

Rosette, LLP
Attorneys at Law
193 Blue Ravine Road
Suite 255
Folsom, California  95630

AFFIDAVIT OF ROBERT ROSETTE REGARDING NOTICE OF EX PARTE EMERGENCY
APPLICATION AND MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

# EXHIBIT A



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Pacific Regional Office
2800 Cottage Way
Sacramento, California 95825

IN REPLY REFER TO:

**Tribal Operations**

FEB 11 2014

Robert A. Rosette, Attorney
Rosette, LLP
  for Lewis Faction
565 West Chandler Boulevard, Suite 212
Chandler, Arizona 85225
CERTIFIED MAIL NO.: 7013 0600 0001 1876 6925
RETURN RECEIPT REQUESTED

John Peebles, Attorney
Fredericks Peebles & Morgan LLP
  For Reid Faction
2020 L Street, Suite 250
Sacramento, California 95825
CERTIFIED MAIL NO.: 7013 0600 0001 1876 6932
RETURN RECEIPT REQUESTED

Lester J. Marston, Attorney
Law Offices of Rapport and Marston
  for Ayala Faction
405 W. Perkins Street
Ukiah, California 95482
CERTIFIED MAIL NO.: 7013 0600 0001 1876 6949
RETURN RECEIPT REQUESTED

Dear Mr. Rosette, Mr. Peebles, and Mr. Marston:

The purpose of this correspondence is to inform you of my decision regarding the Notices of Appeal dated June 14, 2013, October 3, 2013, and October 9, 2013, filed in accordance with 25 CFR, Part 2.9 by the Reid Faction, the Lewis Faction, and the Ayala Faction, respectively. These appeals relate to the actions of the Superintendent, Central California Agency, returning the requests to contract with the Bureau of Indian Affairs (BIA) under the Indian Self-Determination and Education Assistance Act (ISDEAA), Public Law 93-638, submitted by each faction.



The Reid Faction, consisting of Morris Reid, Janice Devine, Dixie Jackson, Harold Hammond, and Frank Fernandez, timely filed a Notice of Appeal, dated June 14, 2013, of the Superintendent's May 16, 2013, decision. The Reid Faction cites two decisions in the Superintendent's May 16, 2013, correspondence as the subject of the appeal. First, the Superintendent's decision to recognize the council elected as a result of the December 1, 2012, election consisting of: Nancy Ayala, Chairperson; Reggie Lewis, Vice-Chairperson; Tract Brechbuel, Secretary; Karen Wynn, Treasurer; Chance Alberta, Member-at-Large; Charles Sargosa, Member-at-Large; and Carl Buzz Bushman, Member-at-Large. Second, the Superintendent's decision to return the Reid Faction's request to contract under Public Law 93-638 with the BIA.

The Lewis Faction, consisting of Reggie Lewis, Chairman; Carl "Buzz" Bushman, Vice Chairman; Irene Waltz, Secretary; Chance Alberta, Treasurer; Melvin Espe, Member-at-Large; David Castillo, Member-at-Large; and Lynn Chenot, Member-at-Large, timely filed a Notice of Appeal, dated October 3, 2013, of the Superintendent's September 4, 2013, decision. The Lewis Faction cites three appealable issues of the Superintendent's decision to return the Lewis Faction's request without action due to his lack of jurisdiction because of the Reid Faction's appeal pending before the Regional Director. First, the Lewis Faction asserts the Superintendent ". . . failed to cite any declination criteria, legal basis, or lawful reason for refusing to act upon the Tribe's 638 Contract Proposal." Second, the Lewis Faction asserts ". . . the IBIA Orders and the applicable law all clearly direct the Superintendent to perform his duty and his responsibility to determine which individuals are authorized Tribal officials empowered to apply for and execute a 638 contract for FY 2013." Third, ". . . the BIA has not lived up to its duties under its trust relationship to make clear that the current governing body [is] occupying the Chukchansi Gold Resort & Casino."

The Ayala Faction, consisting of the Tribal Council led by Nancy Ayala, timely filed a Notice of Appeal, dated October 9, 2013, of the Superintendent's September 4, 2013, decision[1]. The Ayala Faction cites the Superintendent's decision to return without action, the Ayala Faction's P.L. 93-638 application for a new three-year contract, Fiscal Years 2013-2015, because the Superintendent was precluded from acting upon the Ayala Faction's request due to the appeal pending before the Interior Board of Indian Appeals (IBIA), citing BIA's reliance upon *Picayune Rancheria of the Chukchansi Indians; Morris Reid, Dora Jones, Dixie Jackson, and Harold Hammond v. Pacific Regional Director, Bureau of Indian Affairs*, Docket No IBIA 13-045, Order dated April 2, 2013, as the appealable issue.

In the Order of April 2, 2013, in *Picayune Rancheria of the Chukchansi Indians; Morris Reid, Dora Jones, Dixie Jackson, and Harold Hammond v. Pacific Regional Director, Bureau of Indian Affairs, supra*, IBIA (Board) states "without determining whether the pendency of this appeal, under the facts of this

---

[1] On November 13, 2013, the Pacific Regional Office received the Reid Faction's Motion to Dismiss the "untimely" Notice of Appeal filed by the Ayala Faction. In a letter dated December 2, 2013, I denied the motion citing 25 CFR Part 2.15, computation of time, which states "computation shall include the last day of the period, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." Due to the 2013 Government shutdown, from October 1, 2013, to October 17, 2013, the Ayala Faction was not afforded the opportunity to submit their Notice of an Appeal until October 17, 2013, or the end of the next day following October 7, 2013, when the BIA was reopened.

case, divests BIA of jurisdiction to consider a request on behalf of the Tribe for a new contract for FY 2013, the Board grants BIA jurisdiction to consider such a request (or requests)." Further, in the July 10, 2013, Order Concerning BIA Jurisdiction Over FY 2013 Contract Proposals and Over FY 2012 Contract Matters, and Order Directing and Allowing Responses to Appellant's Supplemental Submission, the IBIA states: "Any issues regarding the jurisdiction of the Superintendent to address proposals or requests while Appellants' appeal is pending before the Regional Director should be resolved by the Regional Director." Thus the Board's Order provides me the authority to hear these appeals, as they are all related to the ISDEAA contract proposals of the Picayune Rancheria of Chukchansi Indians for Fiscal Years 2013-2015.

All the appeals pertain to a request for a new ISDEAA contract for the Picayune Rancheria of Chukchansi Indians for FY 2013-2015. On December 10, 2013, due to the related subject matter of the appeals, and in accordance with Title 25, Code of Federal Regulations, Part 2.18, Consolidation of Appeals, I exercised my discretionary authority to combine the related appeals and issue one decision to resolve them. In addition, each party was given the opportunity to submit any final arguments to this office before a decision is issued[2].

The leadership of the Picayune Rancheria of Chukchansi Indians has been embroiled in disputes since the December 3, 2011, election. The hold-over officers (individuals not up for election and whose terms had not expired) that remained on the Tribal Council were Nancy Ayala, Jennifer Stanley and Nokomis Hernandez[3]. It appears the 2011 election was conducted in accordance with the Tribe's Constitution adopted on October 22, 1988, and the Election Ordinance adopted on October 21, 2010. Under the 1988 Constitution, the Tribal Council has staggered terms and the regular tribal election held on December 3, 2011, was for the four Tribal Council seats whose terms had expired. The 2011 election results reflect that Morris Reid, Dora Jones, Dixie Jackson and Harold Hammond, Sr., received the highest number of votes in the election[4]. However, multiple candidates running in the election appealed to the Election Committee challenging eligibility of Harold Hammond, Sr., to be seated as a member of the Tribal Council, claiming that Mr. Hammond should have never been qualified to run for office as he did not meet the eligibility requirements[5]. The appeals of Mr. Hammond's eligibility to run for office led to a disagreement over whether the Reid faction was duly installed on to the council in accordance with the Constitution. The Reid faction claimed to be duly seated at the December 26, 2011, Tribal Council meeting, in accordance with tribal law. The Lewis Faction disputed whether the elected Tribal Council was properly seated and remained in office in accordance with tribal law. The record does not reflect if the question whether the elected Reid Faction was properly seated in accordance with Tribal law was finally resolved and this issue resulted in ongoing internal leadership disputes with both factions claiming to be the authorized governing body. The record shows the

---

[2] The December 10, 2013, letter provided a deadline of January 7, 2014, to submit final arguments; however, on January 6, 2014, the Superintendent forwarded a request from the Ayala Faction to extend the deadline to January 10, 2014. In accordance with 25 CFR § 2.16, on January 7, 2014, I granted the request to extend the deadline to January 10, 2014. All arguments were submitted or postmarked by January 10, 2014.
[3] The record reflects that Nokomis Hernandez was appointed by the Tribal Council to replace Patrick Hammond, III.
[4] See February 1, 2013, Administrative Record, Tab F, 66.
[5] See February 1, 2013, Administrative Record, Tab F, 59,60,64,63, and 65.

Lewis Faction held a General Council meeting on March 10, 2012[6], in an attempt to settle the dispute, but the validity of the meeting and the actions adopted at that meeting are contested by the Reid Faction. The Reid Faction did not participate in this meeting and challenges the validity of the meeting, claiming it was not called and conducted by the legitimate Tribal Council.

It appears the Tribe was still embroiled in an intra-tribal dispute between the Reid Faction and the Lewis Faction when a December 1, 2012, election was held by the Lewis Faction. The record reflects the December 1, 2012, election was conducted in accordance with the Tribe's Constitution adopted on October 22, 1988, and the Election Ordinance amended on September 20, 2012. The Tribal Council has staggered terms and a regular tribal election was conducted on December 1, 2012, for the three Tribal Council seats whose terms had expired. As indicated by the December 1, 2012, election report signed by Dominque Carrillo on January 3, 2013, the hold-over officers that remained on the Tribal Council were Reggie Lewis, Chance Alberta, Tracey Brechbuel and Karen Wynn and that Nancy Ayala, Carl Bushman and Charles Sargosa received the highest number of votes in the election. The Reid Faction did not participate in this election and contends it was not a valid tribal election because it was not held by the legitimate tribal government or Election Committee (due to the Reid Faction suspending Dominique Carrillo, Dana Hall and Orianna Walker from their positions on the Election Committee[7]). Further, they challenge the inclusion of Reggie Lewis, Chance Alberta, Karen Wynn and Tracey Brechbuel, on the Tribal Council, as those four seats are the same seats the Reid Faction claimed to occupy. The record does not reflect that the December 1, 2012, election resolved the pending leadership dispute regarding the interpretation of the installation of newly elected officers from the past election.

The Ayala/Lewis Faction temporarily suspended Tribal Council members Karen Wynn and Tracey Brechbuel on January 24, 2013, due to allegations concerning misuse of tribal funds. In correspondence dated January 31, 2013, the Ayala/Lewis Faction provided notice of the temporary suspensions to Karen Wynn and Tracey Brechbuel pending the outcome of an investigation (the Ayala Faction later disputed the validity of these suspensions).

The record reflects that another intra-tribal dispute arose splitting the Ayala/Lewis Faction, apparently resulting from actions taken by the Ayala Faction on February 21, 2013, wherein they removed the entire Tribal Council, with the exception of Ayala, and replaced them with another Tribal Council. A series of suspensions and removals occurred in both factions, but it is unclear if either had a quorum of the Tribal Council.

In a purported attempt to resolve the dispute, the Lewis Faction attempted to utilize the referendum procedure, and on June 19, 2013, the Indian Dispute Resolution Services certified the results of the referendum and held a General Council meeting on September 14, 2013. At some point, following the General Council Meeting, the Lewis and Reid Factions reconciled their differences and began working together. In a letter dated January 2, 2014, the Reid and Lewis Factions submitted a joint

---

[6] See February 1, 2013, Administrative Record, Tab F, 6.
[7] See February 1, 2013, Administrative Record, Tab F, 35.

response to this Office's December 10, 2013, letter. The Lewis/Reid Faction state ". . . the two separate P.L. 93-638 contract applications for FY 2013-2015, are renewed, by way of this correspondence, as a single contract application for your consideration."[8]

This Office received two reports of a Tribal Election held December 7, 2013, submitted by the Lewis/Reid Faction and the Ayala Faction. According to memorandums from the Central California Agency Superintendent dated January 15, 2014, and January 22, 2014, the combined Lewis/Reid Faction reported its election was conducted pursuant to the Tribe's Constitution adopted on October 22, 1988, and Election Ordinance amended on October 17, 2013, while the Ayala Faction December 7, 2013, tribal election was conducted in accordance with the Tribe's Constitution adopted on October 22, 1988, and the Election Ordinance amended on September 23, 2013. Following the December 7, 2013, elections, attorneys for both factions submitted correspondence arguing the merits of their elections, urging BIA recognition of respective elections, and discussing the invalidity of the other faction's election.[9] Despite efforts by the various factions, the two tribal elections held on December 7, 2013, did not resolve the intra-tribal dispute over the interpretation regarding the installation of newly elected officers and the controversy carried over to the subsequent elections.

In *Cayuga Indian Nation of New York, Clint Halftown, Tim Twoguns, and Gary Wheeler v Eastern Regional Director, Bureau of Indian Affairs,* Docket No. IBIA 12-005, Order Vacating Decision, the IBIA states, ". . . at least since 1996, the Board has recognized that BIA has the authority to make a determination on tribal leadership 'when the situation [has] deteriorated to the point that recognition of some government *was essential for Federal purposes.' Wadena v. Acting Minneapolis Area Director,* 30 IBIA 130, 145 (1996) (emphasis added). A corollary is that BIA has 'both the authority and responsibility to interpret tribal law *when necessary to carry out the government-to-government relationship* with the tribe.' *United Keetoowah Band of Cherokee Indians v. Muskogee Area Director,* 22 IBIA 75, 80 (1992) (emphasis added); *see also Ransom v. Babbitt,* 69 F. Supp. 2d 141, 151-52 (D.D.C. 1999) (Department has authority to review tribal procedures 'when it is forced to recognize' tribal leadership). And it is well-established that in executing responsibilities for carrying on government relations with a tribe and providing necessary day-to-day services, *BIA may not effectively create a hiatus in tribal government by simultaneously recognizing two tribal governments or declining to recognize any tribal government. Goodface v. Grassrope,* 708 F.2d 335, 338-39 (8th Cir. 1983)."

In *Steven R. Smith v Acting Pacific Regional Director, Bureau of Indian Affairs,* Docket No. 42 IBIA 224, Order Dismissing Appeal, the IBIA states: ". . . it is well-settled that a valid election held during the pendency of an appeal moots any questions concerning prior tribal leadership. See e.g., *Williams v. Alaska Regional Director,* 39 IBIA 140, 142 (2003); *Kostzuta v. Southern Plains Regional Director,* 35 IBIA 205 (2000); *Rosales v. Sacramento Area Director,* 34 IBIA 125, 126 (1999); *Hamilton v. Acting Sacramento Area Director,* 29 IBIA 122, 123 (1996); *Villegas v. Sacramento Area Director,* 24 IBIA 150,

---

[8] No formal request meeting the requirements set forth in 25 CFR § 900, Subpart C, has been submitted for consideration by the Lewis/Reid Faction.

[9] Although the Lewis and Reid factions have apparently reconciled and are now working together, the Reid Faction has two appeals pending before the IBIA claiming to be the legitimate governing body of the Picayune Rancheria, IBIA Docket Nos. 13-045 and 13-081.

151-52 (1993). "[T]he determination of tribal leadership is quintessentially an intra-tribal matter raising issues of tribal sovereignty, and therefore the Department should defer to tribal resolution of the matter through an appropriate tribal forum, including the normal electoral process.' *Hamilton*, 29 IBIA at 123."

While this Office defers to tribal interpretations of tribal laws, it has not been possible to ascertain which factions actions are consistent with Tribal Law. There is no dispute that the Constitution of the Picayune Reservation, adopted by the Tribe October 22, 1988, is the Tribe's supreme governing document. However, the record reflects numerous instances where the Election Ordinance was amended by the various compositions of the opposing factions,[10] purportedly in accordance with the Tribe's Constitution. The record also shows that multiple Tribal Courts were formed by the opposing factions, in attempts to resolve these issues. There is no provision in the Tribe's Constitution or federal law that provides the BIA with the authority to determine which of the opposing factions interpretation of the Tribe's law is correct, disputes regarding leadership of Picayune Rancheria of Chukchansi Indians are controlled by tribal law, and fall within the exclusive jurisdiction of the tribe, and BIA does not have the authority to determine the Tribe's permanent leadership. The record does not reflect whether recent tribal elections were conducted in accordance with tribal governing documents. *As such, I affirm the Superintendent's decision to return the ISDEAA contract requests of all three factions, and vacate the Superintendent's decision to recognize the results of the December 1, 2012, election.*

The situation at the Picayune Rancheria of Chukchansi Indians has deteriorated to a point that recognition of a government is essential for the purpose of contracting under the ISDEAA, and to prevent any further hiatus of this government-to-government relationship with the Picayune Rancheria of Chukchansi Indians. Therefore, the Bureau of Indian Affairs, Pacific Region, will conduct business, on an interim basis, with the last uncontested Tribal Council[11] elected December 2010, consisting of: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez; until such time as the issue is resolved in accordance with the Tribe's laws.

The level of conflict to which this dispute or disputes have risen since the December 2011, election is extremely concerning to this Office. In February 2012 it was reported that an attempt to take over the Tribal Office by one of the factions led to violence resulting in a stabbing of one individual, and requiring the Madera County Sheriff's Department to intervene. In February 2013 it was reported that a faction occupied the Tribal Office threatening violence with respect to anyone who attempted to remove the faction, again leading to intervention by the Sheriff's Department[12]. In addition to

---

[10] While this Office has received a copy of two of the versions of the amended Election Ordinance, the other versions have been addressed by the factions in various correspondence. (See September 10, 2013, letter from Dominique Carillo to the General Membership; January 16, 2014, memorandum from Superintendent to Regional Director; January 22, 2014 memorandum from Superintendent to Regional Director; December 16, 2013, letter from Lewis/Reid Faction to Regional Director, Exhibit C)

[11] See *Acting Governor Leslie Wardrie-Harjo, Cheyenne and Arapaho Tribes V. Southern Plains Regional Director*, 53 IBIA 121, 124 (2011)

[12] As indicated by the February 27, 2013, Sierra Star article titled "Tribal Leadership Split At Picayune Rancheria.

these reports, the dispute over the Tribe's leadership has led to multiple financial hardships including reported defaults on loans connected with the Tribe's gaming facility.  In addition, many Federal agencies have been unable to determine with whom to conduct business amidst the dispute, causing essential Tribal programs that are funded by the Federal government to cease operation[13], including the loss of NAHASDA funds.  Due to these increasing issues there appears to be several grounds for finding it would be in the public interest to put this decision into immediate effect.  As such, I will be filing a motion with the IBIA to place my decision into immediate effect.

This decision may be appealed to the Interior Board of Indian Appeals, 801 North Quincy Street, Arlington, Virginia 22203, in accordance with regulations at 43 CFR § 4.310 and 4.349.  Your Notice of Appeal to the Board must be signed by you or your attorney and must be mailed within 30 days of the date you receive this decision.  It should clearly identify the decision being appealed.  If possible, attach a copy of the decision.  You must send copies of your Notice of Appeal to (1) The Assistant Secretary – Indian Affairs, 4160 MIB, U.S. Department of the Interior, 1849 C Street, N.W., Washington, D.C. 20240, (2) each interested party known to you, and (3) this office.  Your Notice of Appeal sent to the Board of Indian Appeals must certify that you have sent copies to these parties.  If you file a Notice of Appeal, the Board of Indian Appeals will notify you of further appeal procedures.  If no appeal is timely filed, this decision will become final for the Department of the Interior at the expiration of the appeal period.  No extensions of time may be granted for filing a Notice of Appeal.

Sincerely,

*Amy Ch Clutschke*

Regional Director

cc: See Attached Distribution List

---

[13] See *Picayune Rancheria of Chukchansi Indians, et al, v. Sandra B Henriquez, et al,* No.
CV-13-01917-PHX-DGC, Order, December 30, 2013, at Page 8 Line 5

Michael Black, Director
Bureau of Indian Affairs
1849 C Street, N.W.
MS – 4606 - MIB
Washington, DC 20240

Interior Board of Indian Appeals
United States Department of the Interior
801 North Quincy Street, MS 300 QC
Arlington, VA 22203

Troy Burdick, Superintendent
Bureau of Indian Affairs
Central California Agency
650 Capital Mall, Suite 8-500
Sacramento, CA 95814

Office of the Solicitor
Pacific Southwest Region
United States Department of Interior
2800 Cottage Way, Room E-1712
Sacramento, CA 95825

Congressman Jeff Denham
United States Congress
1730 Longworth HOB
Washington, DC 20515

Senator Dianne Feinstein
United States Senate
331 Hart Senate Office Building
Washington, DC 20510

Congressman Tom McClintock
United States Congress
434 Cannon House Office Building
Washington, DC 20515

Office of the Governor Edmund G. Brown, Jr.
ATTN: Jacob Appelsmith, Senior Advisor to the Governor
c/o State Capitol, Suite 1173
Sacramento, CA 95814

Carolyn O'Neil, Administrator
U.S. Department of Housing and Urban Development
Southwest Office of Native American Programs
1 North Central Avenue, Suite 600
Phoenix, AZ 85004

Denise Zvanovec, Grants Management Officer
Management & Technical Services Division
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street, M/S ORC-2
San Francisco, CA 94105

John Anderson, Sheriff
Madera County Sheriff's Office
14143 Road 28
Madera, CA 93638

Board of Supervisors
County of Madera
Madera County Government Center
200 West Fourth Street
Madera, CA 93637

Paula Hart, Director
Office of Indian Gaming, Indian Affairs
MS – 3657 – MIB
1849 C Street, NW
Washington, DC 20240

National Indian Gaming Commission
ATTN: Maria Geoff, Senior Attorney
1441 L Street NW, Suite 9100
Washington, DC 20005

# EXHIBIT B

CLEMENTINE JOSEPHSON
Acting Regional Solicitor
KAREN D. KOCH &
SAPPHIRE DIAMANT-RINK
Assistant Regional Solicitors
U.S. Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825
Telephone (916) 978-6131(FAX 5694)

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS

| | |
|---|---|
| Picayune Rancheria of the Chukchansi ) Indians; and Morris Reid, Dora Jones, Dixie ) Jackson, and Harold Hammond ) ) Appellants, ) ) v. ) ) Pacific Regional Director, ) Bureau of Indian Affairs, ) ) Appellee. ) | DOCKET NO. IBIA 13-045 REQUEST TO MAKE FEBRUARY 11, 2014, DECISION EFFECTIVE IMMEDIATELY |

Undersigned Counsel submits this Request to Make Decision Effective Immediately on behalf of

the Department of the Interior, Bureau of Indian Affairs, Regional Director, Pacific Region

(Regional Director).

By Order dated April 2, 2013, an administrative appeal, IBIA 13-045, concerning renewal of the

Tribe's FY 2012 contract, the Board granted the Bureau of Indian Affairs (BIA) jurisdiction to consider new contract proposals. By Order dated July 10, 2013, the Board affirmed the Regional Director should resolve any appeals regarding such contract requests. The Regional Director issued her February 11, 2014, decision concerning the appeals of the Superintendent's decisions which recognized the results of the election held December 1, 2012, and returned contracts submitted by factions. Specifically, the Regional Director affirmed the Superintendent's decisions to return the numerous contract requests, and determined that the Tribe's last uncontested governing body would be recognized for Indian Self-determination and Education Assistance Act (ISDEAA) contracting purposes on an interim basis.

The Regional Director recognized that the situation has deteriorated to a point that recognition of a government was essential to prevent any further hiatus of the government-to-government relationship with the Tribe. Accordingly, she affirmed the Superintendent's decisions to return the contract requests, and at the time of the decision to recognize the last uncontested governing body there was no federal action pending before the BIA. However, on February 13, 2014, pursuant to 25 CFR Part 900, the Superintendent received an ISDEAA Contract request from the last uncontested governing body of the Tribe. Therefore, a federal action requiring the recognition of a governing body is currently pending before the Superintendent.

Due to the exigency of the present situation, undersigned counsel respectfully requests that the Board put the Regional Director's February 11, 2014, Decision into immediate effect. The level of conflict to which these disputes have risen since the December 2011 election is extremely concerning. In February, 2012, a violent attempt to take over the Tribal Office by one of the factions led to the stabbing of one individual, and required the Madera County Sheriff's

2

Department to intervene.  In February, 2013, it was reported that a faction occupied the Tribal

Office threatening violence with respect to anyone who attempted to remove the faction, again

leading to intervention by the Sheriff's Department.  In addition to these reports, the dispute over

the Tribe's leadership has led to multiple financial hardships including reported defaults on loans

connected with the Tribe's gaming facility.   In addition, many Federal agencies have been

unable to determine with whom to conduct business amidst the dispute, causing essential Tribal

programs that are funded by the Federal government to cease operation, including the loss of

NAHASDA funds. [1]  Furthermore, immediately following the Regional Director's issuance of

her decision, counsel for the Ayala Faction communicated his concern that any attempt by the

Tribal Council recognized in the decision to resume control of the Tribal Offices and/or Casino

could possibly result in murder.

These leadership disputes have resulted in violence in the past, and could result in further

violence.  The Madera County Sheriff has issued statements that his office is prepared to

intervene to protect the public safety should it become necessary.  The Regional Director is

requesting that her decision to recognize the last uncontested governing body of the Tribe be

placed into immediate effect to preserve the health and public safety of the Picayune Rancheria

and surrounding area.

The hiatus in government-to-government relations has resulted in the inability of BIA and other

federal agencies to fund Tribal contracts and otherwise satisfy obligations that affect public

safety, which has resulted in individual and collective harm to the Tribe and its members.

---

[1] See *Picayune Rancheria of Chukchansi Indians, et al, v. Sandra B Henriquez, et al,* No. CV-13-01917-PHX-DGC, Order, December 30, 2013, at Page 8 Line 5.

Consequently, ample grounds exist for finding it would be in the public interest to make the

February 11, 2014, Decision effective immediately pursuant to 25 C.F.R. § 2.6, allowing the

Superintendent to approve the ISDEAA contract request submitted by the last uncontested

governing body, Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid,

Reggie Lewis, and Nokomis Hernandez. Dated this 19th day of February, 2014.


Sapphire Diamant-Rink
Assistant Regional Solicitor

4

## CERTIFICATE OF SERVICE

RE: Picayune Rancheria of the Chukchansi Indians; and Morris Reid, Dora Jones, Dixie Jackson, and Harold Hammond v. Pacific Regional Director BIA; IBIA 13-045

I, the undersigned, declare that:

I am a citizen of the United States, over the age of eighteen, and not a party to this litigation. On February 19, 2014, I served the

### "REQUEST TO MAKE FEBRUARY 11, 2014, DECISION EFFECTIVE IMMEDIATELY"

by placing true copies enclosed in sealed envelopes, to be delivered as indicated, at Sacramento, California, addressed as follows:

Federal Express

Robert A. Rosette, Esq.
Rosette, LLP
565 West Chandler Boulevard
Suite 212
Chandler AZ 85225
480-889-8990

John Peebles, Esq.
Fredericks Peebles & Morgan LLP
2020 L Street, Suite 250
Sacramento CA 95825
916-441-2700

Lester J. Marston, Esq.
Law Offices of Rapport and Marston
405 W. Perkins Street
Ukiah CA 95842
(707) 462-6846

Interior Board of Indian Appeals
U.S. Department of the Interior
801 North Quincy Street, MS 200 QC
Arlington VA 22203
703-235-3816

U.S. Mail

Michael Black, Director
Bureau of Indian Affairs
1849 C Street, N.W.
MS – 4606-MIB
Washington DC 20240

Troy Burdick, Superintendent
Bureau of Indian Affairs
Central California Agency
650 Capitol Mall, Suite 8-500
Sacramento CA 95814

Congressman Jeff Denham
United States Congress
1730 Longworth HOB
Washington DC 20515

Congressman Tom McClintock
United States Congress
434 Cannon House Office Building
Washington DC 20515

Carolyn O'Neil, Administrator
U.S. Department of Housing and Urban Development
Southwest Office of Native American Programs
1 North Central Avenue, Suite 600
Phoenix AZ 85004

John Anderson, Sheriff
Madera County Sheriff's Office
14143 Road 28
Madera CA 93638

Paula Hart, Director
Office of Indian Gaming, Indian Affairs
MS – 3657-MIB
1849 C Street, N.W.
Washington DC 20240

Denise Zvanovec, Grants Management
Officer
Management & Technical Services Division
U.S. Environmental Protection Agency,
Region 9
75 Hawthorne Street, M/S ORC-2
San Francisco CA 94105

Senator Dianne Feinstein
United States Senate
331 Hart Senate Office Building
Washington DC 20510

Board of Supervisors
County of Madera
Madera County Government Center
200 West Fourth Street
Madera CA 93637

Office of the Governor Edmund G. Brown,
Jr.
ATTN: Jacob Appelsmith, Senior Advisor to
the Governor
c/o State Capitol, Suite 1173
Sacramento CA 95814

National Indian Gaming Commission
ATTN: Maria Geoff, Senior Attorney
1441 L Street N.W., Suite 9100
Washington DC 20005

    I certify under penalty of perjury that the foregoing is true and correct.  Executed on the 19th day of February 2014 at Sacramento, California.

*Thomas D Eckert*

Thomas D. Eckert
Secretary

# EXHIBIT C

1

```
 1
 2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK: TRIAL TERM PART 45
 3    - - - - - - - - - - - - - - - - - - - - X
 4    WELLS FARGO BANK, N.A., AS TRUSTEE,
 5                          Plaintiff,
                                                 INDEX NO.
 6            - against -                         652140/13
 7    CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY,
      THE BOARD OF THE CHUKCHANSI ECONOMIC
 8    DEVELOPMENT AUTHORITY, THE TRIBE OF
      PICAYUNE RANCHERIA OF THE CHUKCHANSI
 9    INDIANS, THE TRIBAL COUNCIL OF THE TRIBE OF
      PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,
10    THE PICAYUNE RANCHERIA BRIBAL GAMING
      COMMISSION, RABOBANK, N.A., GLOBAL CASH
11    ACCESS, INC., NANCY AYALA, TRACY BRECHBUEHL,
      KAREN WYNN, CHARLES SARGOSA, REGGIE LEWIS,
12    CHANCE ALBERTA, CARL BUSHMAN, and BANK OF
      AMERICA, N.A.,
13
                              Defendants.
14
      - - - - - - - - - - - - - - - - - - - - X
15                    60 Centre Street
                      New York, New York
16                    September 11, 2013
                      PROCEEDINGS
17
18    BEFORE:
19            HONORABLE MELVIN SCHWEITZER,
                                        Justice
20
21    APPEARANCES:
22        LATHAM & WATKINS LLP
          Attorneys for the Plaintiff
23        885 Third Avenue
          New York, New York   10022
24        BY:   ROBERT J. MALIONEK, ESQ.
25
26
```

2

```
 1                         Appearances

 2

 3       LEWIS BRISBOIS BISGAARD & SMITH LLP
         Attorneys for Defendants Chukchansi Economic
         Development Authority, Tribe of Chukchansi,
 4       Nancy Ayala, Karen Wyn, Charles Sargosa,
         Tracy Brechbuehl
 5       77 Water Street, 21st Floor
         New York, New York 10005
 6       BY:   PETER T. SHAPIRO, ESQ.

 7

         RAPPAPORT & MARSTON
 8       Attorneys for Ayala
         405 W. Perkins Street
 9       Ukiah, California   95482
         BY:  LESTER J. MARSTON, ESQ.
10

11       SCHINDLER COHEN & HOCHMAN LLP
         Attorneys for Lewis Parties
12       100 Wall Street, 15th Floor
         New York, New York   10005
13       BY:   STEVEN R. SCHINDLER, ESQ.
               JONATHAN L. HOCHMAN, ESQ.
14

15       ROSETTE LLP
         Attorneys for Lewis
16       565 W. Chandler Road, Suite 212
         Chandler, Arizona   85225
17       BY:   ROBERT A. ROSETTE, ESQ.
               RICHARD ARMSTRONG, ESQ., of Counsel
18

19       TILDEN McCOY & DILWEG LLP
         Attorneys for Defendant Ayala Tribal Gaming Commission
20       515 South Flower Street, 36th Floor
         Los Angeles, California   90071
21       BY:  RORY E. DILWEG, ESQ.

22

23       PETTI & BRIONES PLLC
         Attorneys for Casino
         5090 North 40th Street, Suite 190
24       Phoenix, Arizona   85018
         BY:  PATRICIA LANE BRIONES, ESQ.
25

26
```

1                              Appearances

2

3         K & L GATES
          Attorneys for Tribe/CEDA
4         599 Lexington Avenue
          New York, New York   10022-6030
5         BY:  BRIAN D. KOOSED, ESQ.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23                      Bonnie Piccirillo
                     Official Court Reporter
24

10:52:33   25

26

4

1                          Proceedings

2

3           THE COURT:  Good morning.  Have seats.

4           Well, this is Wells Fargo Bank as Trustee against

11:00:07   5   Chukchansi Economic Authority, et al.  And what we were

6   here for originally is a motion by the Lewis faction

7   seeking to modify my July 2nd order and we will get to that

8   motion, and also to seek a Special Master.

9           But, I think the first thing that we have to deal

11:00:47   10   with is the Trustee's issue that was brought to my

11   attention by letter that several interest payments, a

12   certain interest payment has not yet been made; and that's

13   a very serious matter, and I'd like to hear from the

14   Trustee as to what has happened here.

11:01:16   15           MR. MALIONEK:  Thank you, your Honor.

16           Robert Malionek from Latham & Watkins for Wells

17   Fargo as the Trustee.  And, thank you for your continued

18   attention in this matter.  I know that it's required quite

19   a bit, even as your Honor was away.

11:01:31   20           The one issue that we wanted to raise for this

21   hearing because, as you know, your Honor, we've said many

22   times we take no position on what we regard to be the

23   jurisdictional-type issue of who is the proper authority

24   here.  But either way, the Trustee does have an interest in

11:01:52   25   insuring that the indenture is complied with.

26           The whole point of bringing this proceeding, in

Bonnie Piccirillo - Official Court Reporter

Proceedings

1

2        That was fine.   There were some meet and confers.

3    They didn't go very well, because the Ayala faction took

4    the position, We want $1.7 million and you get to object

5    under the court's order; but thumbs up, thumbs down.

6        You don't get to have a line item veto, which is

7    what we need and we said, Well, you know, that's no good.

8    You need to give us specific granular information about

9    what you want to spend it on; because we all agree that

10    they're completely legitimate Tribal payments that should

11    be made for elder care, for kindergarten, for

12    scholarships, for monthly Tribal distributions.   That's all

13    good.

14        But, what we don't agree with is the Ayala

15    faction, one, administering those programs

16    discriminatorily.   Two, paying themselves or, you know,

17    having lots of cash going out unsupervised and not knowing

18    where it's going, but presumably to them; or three,

19    disbursing cash in a way that's designed, obviously, to

20    forward their political goals and secure their political

21    position.

22        THE COURT:   See, but what you're doing, you're

23    trying to rope me into a position where I'm going to be

24    running tribe and I don't want to do that.   The funny thing

25    about it is that you got me on the telephone on vacation

26    where I didn't have any papers in front of me, including

Proceedings

1                           Proceedings

2  the indenture.  I've read the indenture now very carefully

3  and excluded assets is a different category.

4           MR. HOCHMAN:  Exactly.

5           THE COURT:  And once you're talking about the

6  excluded assets, you're talking about running the tribe.

7  Right now the way this Court has tried to approach it is

8  with respect to the operation of the casino, that was one

9  thing because it had to do with making sure that interest

10  payments get paid.  The casino isn't operating properly if

11  the Commission isn't being paid, things could come to a

12  halt.

13       But once you get into the issue of excluded

14  assets, and we're talking about discriminatory payments and

15  what's discriminatory and what's not and things like that,

16  I'm running the show and I don't want to run the show.

17           MR. HOCHMAN:  Your Honor, I completely understand

18  that concern, but let me flesh out kind of the full

19  dimensions of the problem.

20       Because right now, and excluded assets go directly

21  to the issue of who the legitimate CEDA board is.  Because,

22  excluded assets are only excluded assets if they go to the

23  legitimate CEDA board.  That's the definition in the

24  indenture.

25       You read it carefully.  You know it has to go to

26  the actual CEDA board.  So if the Ayala faction isn't the

1                    Proceedings

2    force and they passed some sort of resolution saying he's

3    the casino manager now.

4         THE COURT:  See, I'm just dealing with what I

5    found, and I don't think that I have the authority.

6         I mean, obviously, I'm going to read these briefs

7    very carefully and the law to see what it is.  I don't

8    think I have the authority to make that decision, the

9    ultimate decision of which faction is the right faction.

10        And the way I read the indenture, if I say that

11   you either have to go to California courts, because I don't

12   have the jurisdiction; where are your remedies?  You can go

13   to California courts or you can go to arbitration.

14        MR. HOCHMAN:  Well, I mean, we'd be happy to

15   arbitrate this if we could get the other side to consent to

16   do that.  But, yeah, I think that is exactly the problem,

17   your Honor.

18        And, you know, I think for today's purposes and we

19   haven't even briefed the jurisdictional issue yet about

20   whether you should or shouldn't decide who the right CEDA

21   is.

22        THE COURT:  Well, that's the problem with what

23   you're asking me to do.  You're asking me -- I find the

24   Ayala faction is in control.  How they got whether it was

25   an illegal coup or whatever you want to say it is, they're

26   in control.  You just told me that they did it illegally

Bonnie Piccirillo - Official Court Reporter

| | |
|---|---|
| | Proceedings |
| 1 | Proceedings |
| 2 | Commission regulations and the Tribe's gaming ordinance |
| 3 | into consideration when looking at the indenture.  By not |
| 4 | requiring those revenues that the casino generates to be |
| 5 | accounted for, hold in that casino bank accounts leaves the |
| 6 | door open to that sole purpose of IGRA.  To make sure that |
| 7 | everything is accountable, that things aren't stolen. |
| 8 | There's a revenue allocation claim. |

1            Proceedings
2    Commission regulations and the Tribe's gaming ordinance
3    into consideration when looking at the indenture.  By not
4    requiring those revenues that the casino generates to be
5    accounted for, hold in that casino bank accounts leaves the
6    door open to that sole purpose of IGRA.  To make sure that
7    everything is accountable, that things aren't stolen.
8    There's a revenue allocation claim.
9            THE COURT:  I don't understand that argument.
10           So long as the bondholders are being paid -- which
11   is what I'm supposed to insure -- what difference does it
12   make what else is going on?
13           MR. ARMSTRONG:  Exactly, your Honor, because if
14   the money is not going into that bank account, the
15   bondholders aren't getting paid, the revenue allocation --
16           THE COURT:  Wait.  If the bondholders were not
17   getting paid, then I'd have to step in.
18           MR. ARMSTRONG:  Because that is what's happened.
19   On July 7th, 2 million dollars walked out of the casino in
20   cash that was not deposited.
21           THE COURT:  But if the interest payment is made on
22   Friday as a result of what we talked about, what difference
23   does it make?  I understand it makes a big difference in
24   terms of Tribal law, but that has nothing to do with what's
25   going on in the indenture.
26           MR. HOFFMAN:  Your Honor, it has a lot to do with

# EXHIBIT D

Colin C. West
Direct Phone:  +1.415.393.2422
Direct Fax:      +1.415.393.2286
colin.west@bingham.com

February 18, 2014

**Via Email and U.S. Mail**

Robert A. Rosette, Esq.
Rosette, LLP
565 West Chandler Blvd., Suite 212
Chandler, AZ 85225

Dear Mr. Rosette:

This letter acknowledges your letter of February 12, 2014, in which you forwarded the February 11 Decision of the Regional Director of the Bureau of Indian Affairs (BIA) concerning the dispute over the elections of the tribal council of the Picayune Rancheria of the Chukchansi Indians. The Decision clearly states the BIA will conduct business, on an interim basis, with the tribal council elected in December 2010, until such time as the issue is resolved in accordance with the Tribe's laws. The position of Rabobank in this matter remains unchanged, as the Bank is neutral as to a dispute that is entirely within the cognizance of the tribe itself and the appropriate federal agencies.

Rabobank will continue to abide by the July 2, 2013 Order of the Supreme Court of the State of New York for the County of New York (No. 652140/2013). That Order obligates Rabobank to allow various deposits as set forth in the Order, and to allow payments to be made from the tribe's Operating Account as specified, including that payments be made by check signed by Giffen Tan, General Manager of the casino, for legitimate operating expenses of the casino, and payable to the employees and vendors as specified in the Order and its Appendices.

If the tribal council now recognized by the BIA Decision wishes to modify any of the provisions of the Preliminary Injunction, so as to instruct Rabobank to follow procedures that vary from those required by the aforementioned Order, we expect you will seek those changes from Judge Schweitzer, who has continuing jurisdiction over the matter.  We intend to follow Judge Schweitzer's Order and any subsequent rulings from the New York court.

Also, we want to inform you of something that occurred on Thursday, February 13.  As you may know, Rabobank receives deposits through Garda for CEDA and others.  Yesterday, Loomis delivered to Garda two bags of cash, totaling $316,017, for CEDA. There was no identification written on the bag, but a document inside it was labeled "PRCI Tribal Gaming Commission 46575 Rd #417 Coarsegold, CA".  The

Beijing
Boston
Frankfurt
Hartford
Hong Kong
Lexington (GSC)
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

A/75931833.1

Robert A. Rosette, Esq.
February 18, 2014
Page 2

branch manager of the Fresno Branch, Mr. Darrel Hyatt, contacted Joyce Markle to inquire about this deposit.  She said the money belonged to the Chukchansi Rancheria, and that the money was mistakenly delivered to Garda.  She directed Loomis to retrieve the money, and Loomis did.

Please do not hesitate to contact me with any questions or concerns

Sincerely yours,

Colin C. West

cc:      Chester L. McGensy III, Esq.
         John Peebles, Esq.
         Lester J. Marston, Esq.
         Bryant D. Barber, Esq.
         Fred Petti, Esq.