**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PICAYUNE RANCHARIA OF THE CHUKCHANSI INDIANS, a federally-recognized Indian tribe, and the CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY, a wholly-owned Tribal enterprise,<br><br>Plaintiffs,<br><br>v.<br><br>GIFFEN TAN, an individual; JOYCE MARKLE, an individual; LARRY KING, an individual; Ted ATKINS, an individual; DOES 1-20; and XYZ CORPORATIONS 1-20,<br><br>Defendants.<br>_____/ | 1:14-cv-0220-AWI-SAB<br><br>**ORDER RE: APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

**I. Introduction**

Plaintiffs purport to be acting on behalf of the Picayune Rancheria of the Chukchansi Indians, a federally recognized tribe, and the Chukchansi Economic Development Authority ("CEDA"), an entity owned by the Tribe.  CEDA is owner of the Chukchansi Casino ("Casino"). Plaintiffs seek to enjoin the Managerial Staff of the Casino from making any disbursements of

1

Casino revenue to any person or entity other than the Tribal Council[1] recognized by the February 11, 2014, Decision by the Regional Director of the Department of the Interior, Bureau of Indian Affairs. For the following reasons this Court will deny the application for temporary restraining order.

## II. Factual Background

The Picayune Rancheria of the Chukchansi Indians is a federally recognized Indian Tribe. ECF Doc. 1 ("Compl.") at ¶¶ 1, 10. In 2001, the Tribe passed a resolution establishing CEDA and setting its members as the active sitting members of the Tribal Council. Compl. at ¶ 11. CEDA is empowered to own and operate the Casino for the benefit of the Tribe and began doing so in 2003. Compl. at ¶ 12.

Since December, 2011, the leadership of the Tribe has been embroiled in dispute. ECF Doc. 5-3, Bureau of Indian Affairs, February 11, 2014 Decision ("BIA Decision") at p. 3. The Tribe has fractured into three factions, each vying for control of the Tribal Council. BIA Decision at p. 3. The situation deteriorated to the point where multiple competing elections were held; each electing different councilpersons and claiming exclusive validity under tribal law. BIA Decision at p. 5. In the resulting wake of the elections two Tribal Council Members were temporarily suspended by two of the three factions on an unrelated issue. BIA Decision at p. 5.

The BIA decision reflects that Tribe relations were further strained and the situation further muddled on February 21, 2013, when the Ayala Faction removed the entire Tribal Council, with the exception of Ayala, and replaced them with a new Tribal Council. BIA Decision at p. 5. After that action there were a series of purported suspensions and removals by the factions with questionable legal effect. BIA Decision at p. 5. The tribal factions again held elections on December 7, 2013, this time the elections were based on separate Election Ordinances that appear to have been independently modified by the respective factions prior to their elections.

---

[1] The Bureau of Indian indicated that in light of the badly deteriorated status of relations within the Tribe that the Bureau would conduct business with the last uncontested Tribal Council, elected December 2010, consisting of: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez.

2

The Bureau of Indian Affairs ("BIA") recognized that it could not determine tribal leadership since it "is quintessentially an intra-tribal matter" to be decided "through an appropriate tribal forum." BIA Decision at p. 7 (citing *Hamilton v. Acting Sac. Area Director, BIA,* 29 IBIA 122, 123 (I.B.I.A. 1996). Despite this recognition it noted that the situation had deteriorated to the point that it was forced to return the proposed Indian Self-Determination and Education Assistance Act ("ISDEAA") contracts of all three factions. BIA Decision at p. 7. Accordingly, "for the purpose of contracting under the ISDEAA and preventing any further hiatus of the government-to-government relationship with the Picayune Rancheria of Chukchansi Indians" the BIA indicated that it would conduct business, on an interim basis, with the last uncontested Tribal Council, elected December 2010.

Plaintiffs contend that on February 14, 2014, Defendant Markle caused to be distributed over $300,000.00 to an entity that is not the entity that the BIA Decision recognized as the Tribal Council. Plaintiffs now seek to enjoin the Defendants from making any further disbursals to any entity or person not recognized as the Tribal Council by the February 11, 2014, BIA Decision.

### III. Discussion

**A. Jurisdiction**

Federal courts are courts of limited subject matter jurisdiction. In order for a case to be properly before the Court there must be a statute specifically granting it jurisdiction. A federal court "ha[s] an independent obligation to address sua sponte whether [it] has subject-matter jurisdiction." *Dittman v. California,* 191 F.3d 1020, 1025 (9th Cir.1999). It is the obligation of the district court "to be alert to jurisdictional requirements." *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 593 (2004). Without jurisdiction, the district court cannot decide the merits of a case or order any relief. *See Morongo v. Board of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1994).

Plaintiffs claim that this Court possesses subject-matter jurisdiction over this action pursuant to Sections 1331 and 1362 of Title 28 of the United States Code.

*1. Original Jurisdiction*

In order for a district court to have original jurisdiction over a civil action pursuant to Section 1331 such action must arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Further, district courts have original jurisdiction over civil actions brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1362.

As a preliminary matter, it is unclear to this Court whether or not Plaintiffs represent an "Indian tribe or band with a governing body duly recognized by the Secretary of the Interior." As the BIA Decision noted, the BIA Regional Director believed that the decision to recognize the 2010 Tribal Council should be given immediate effect and intended to file a motion with the Interior Board of Indian Affairs to give the decision such effect. Although Plaintiffs submitted the motion that was allegedly filed by the Regional Director, such motion was filed on the same day as the request for temporary restraining order filed with this Court. *See* ECF Doc. 4, Affidavit of Robert Rosette, Exhibit B ("BIA Motion").

Further, the recognition given by the BIA Decision, if given immediate effect, is only as to ISDEAA contracting; not necessarily for IGRA purposes. *See e.g.* 25 U.S.C. § 2703(5). As such, this Court is not convinced that Plaintiffs actually represent the Tribe for all purposes. Jurisdiction pursuant to Section 1362 is in question.

Plaintiffs allege a violation of Section 2710 of Title 25 of the United States Code and Tribal Ordinances enacted pursuant to it.

Section 2710(d) provides that:

> The United States district courts shall have jurisdiction over—
> (i) any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith,
> (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect, and
> (iii) any cause of action initiated by the Secretary to enforce the procedures prescribed under subparagraph (B)(vii).

25 U.S.C. § 2710(d)(7)(A)(i-iii). This Court interprets the foregoing portion of Section 2710 to limit the actions over which the court has original jurisdiction. *See Hein v. Capitan Grande Band of Dieguendo Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) ("where IGRA creates a private cause of action, it does so explicitly…. For example, … it allows tribes to sue states under some circumstances.") (citing 25 U.S.C. § 2710(d)). This is consistent with the remainder of the Chapter. Plaintiffs seek to have this Court issue an injunction preventing dispersal of revenues from gaming activity to any entity not recognized as the Tribe. They do not seek to "enjoin a class III gaming activity … constructed in violation of [the relevant] Tribal-State compact."

The National Indian Gaming Commission ("NIGC") was established by Section 2704. Its Chairman is vested with the authority pursuant to Section 2713 to levy and collect civil fines or impose a temporary closure against the tribal operator or a management contractor for any violation of IGRA or any tribal regulations, ordinances or resolutions approved under Section 2710. 25 U.S.C. § 2713. The Commission itself thereafter has the authority to review the Commissioner's decision and issue a final determination. Section 2714 specifies that the decisions of the Commission are considered final for purposes of appeal to the district court. It is this Court's belief that the Tribe, once officially recognized, should exhaust any remedies available for violation of IGRA with the NIGC prior to seeking relief with this Court.[2]

**B. Temporary Restraining Order**

*1. Legal Standard*

Fed.R.Civ.P. 65 provides authority to issue either preliminary injunctions or temporary restraining orders. A plaintiff seeking a preliminary injunction must demonstrate that he is "[1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir.2009) (quoting *Winter v. Natural Res. Def. Council,* 555 U.S. 7 (2008)). The requirements

---

[2] This Court is not convinced, based on the evidence submitted, that requiring exhaustion of administrative remedies would result in inadequate relief as Plaintiffs claim.

for a temporary restraining order are the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir.2001). A TRO is an emergency measure, intended to preserve the status quo pending a fuller hearing on the injunctive relief requested, and the irreparable harm must therefore be clearly immediate. Fed. R. Civ. Proc. 65(b)(1).

///

*2. Discussion*

i. Likelihood of Success on the Merits

Even if Plaintiffs could prove subject-matter jurisdiction to the satisfaction of this Court, it is not convinced that is has the authority to enjoin any conduct other than "gaming activity." 25 U.S.C. § 2710(d)(7)(A)(i-iii). Plaintiffs have made no claim that the violations of Tribal Ordinances are appropriately considered "gaming activity." Accordingly, Plaintiff has not met the threshold requirement that they are likely to succeed on the merits.

ii. Irreparable Harm

Injunctive relief is only available when legal remedies are "inadequate." See *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) (the basis for injunctive relief is irreparable injury and the inadequacy of legal remedies). Thus, "[a] plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 595 (1952). "Typically, monetary harm does not constitute irreparable harm." *Cal Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 851 (9th Cir.2009) ("Economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award.").

Although Plaintiffs repeatedly allege that they will be unable to recover the funds after they are disbursed to unauthorized entities and persons they submit nothing to support this contention other than a declaration of counsel. Plaintiffs do not allege what would make the recovery impossible from the entity to which the disbursal is given or why CEDA could not recover damages from the Casino management who they claim owe a fiduciary duty to CEDA.

Plaintiffs further allege that the revenues generated by the Casino are critical to fund the Tribe's governmental operations. ECF Doc. 4 at p. 2. This Court is aware of the importance of

the revenue disbursements to tribal self-governance but remains unconvinced that Plaintiffs presently represent the Tribe.

iii. Conclusion

Since Plaintiffs have failed to meet the requirements articulated by the court in *Winter* this Court must deny Plaintiff's application for temporary restraining order.

## IV. Order

Based on the foregoing, THE COURT HEREBY ORDERS:

1. Plaintiff's application for temporary restraining order is DENIED.
2. Plaintiffs are ordered to show cause by February 28, 2014, why their claim should not be dismissed for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

Dated:   February 21, 2014                                                              
                                        SENIOR DISTRICT JUDGE