Robert A. Rosette (CA SBN 224437)
Geoffrey Hash (CA SBN 227223)
ROSETTE, LLP
193 Blue Ravine Rd., Suite 255
Folsom, California 95630
Telephone: (916) 353-1084
Facsimile: (916) 353-1085
rosette@rosettelaw.com
ghash@rosettelaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, a Federally recognized Indian Tribe; CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY a wholly owned, unincorporated entity of the Tribe,<br><br>Plaintiffs,<br><br>vs.<br><br>GIFFEN TAN, an individual; JOYCE MARKLE, an individual; LARRY KING, an individual; TED ATKINS, an individual; JOHN AND JANE DOES 1-20; XYZ CORPORATIONS 1-20,<br><br>Defendants. | Case No.: 1:14-cv-0220-AWI-SAB<br><br>**PLAINTIFFS' RESPONSE TO FEBRUARY 21, 2014 ORDER TO SHOW CAUSE**<br><br>Date:<br>Time:<br>Courtroom:<br><br>Honorable Anthony W. Ishii |

Case No.: 1:14-cv-0220-AWI-SAB

**RESPONSE TO ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………………..…1

II.     FACTUAL BACKGROUND…………………………………………………………1

III.    ARGUMENT………………………………………………………………………….1

    A.  This Court Has Subject Matter Jurisdiction…………………………………………1

        1.  Plaintiffs are the Tribe for all purposes, as recognized by the
            federal government, thus supporting their eligibility to bring a
            claim in federal court under 28 U.S.C. § 1362……………………………..…1

        2.  The Ayala Faction and its appointees are not the Tribe for any
            purpose as recognized by the Federal Government in its
            February 11, 2013 Decision……………………………………………………3

        3.  Plaintiffs meet the definition of "Indian tribe" under the
            Indian Gaming Regulatory Act and seek to have the Court
            enjoin "gaming activity" conducted in violation of the Tribal-State
            Compact, thus providing a basis for jurisdiction under
            25 U.S.C. § 2710(d)(7)(A)(ii)………………………………………………4

            i.      Plaintiffs are an "Indian tribe" under § 2703 and are
                the only entity authorized to conduct gaming activity and
                bring a claim under IGRA…………………………………………….5

            ii.     Plaintiffs seek to enjoin Class III "gaming activity," thus giving
                this Court original jurisdiction under § 2710(d)(7)(A)(ii)……………8

        4.  Plaintiffs are not required to exhaust their administrative remedies
            at the National Indian Gaming Commission…………………………………..9

            i.      The matter to be resolved has not been placed within
                the exclusive jurisdiction of the NIGC…………………………….10

             ii.     The matter does not require the expertise of NIGC
                and uniformity in administration does not justify referral
                of the instant issue of Tribal-State Compact violations
                to the NIGC…………………………………………………………12

    B.  Plaintiffs Are Entitled to Injunctive Relief…………………………………………13

        1.  The IGRA violations and breach of fiduciary duty are blatant, and
            Plaintiffs are therefore likely to succeed on the merits……………………..13

        2.  Recovery of funds after disbursal would be impossible, and
            Plaintiffs have therefore demonstrated that absent injunctive
            relief, they will suffer irreparable harm……………………………………15

         3.  The Court need not balance the equities, but even if it did, the equities
            tip in favor of granting the requested injunctive relief……………………..17

Rosette, LLP
565 W. Chandler Boulevard
Suite 212
Chandler, Arizona  85225

i                   Case No.: 1:14-cv-0220-AWI-SAB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4.   The Court need not weigh the public interest, but even if it did, the public interest would weigh in favor of granting the requested injunctive relief……………………………………………………………17

IV.   CONCLUSION……………………………………………………………..18

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

ii                   Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE

1

## TABLE OF AUTHORITIES

2

3

### Cases

4

*Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165 (9th Cir. 2010).................... 13

5

*Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166 (9th Cir. 2002) ..................... 12

*Clark v. Time Warner Cable,* 523 F.3d 1110 (9th Cir. 2008) ........................................... 9

6

*Cohens v. Virginia*, 19 U.S. 264 (1821) ............................................................................ 13

7

*Colorado River Indian Tribes v. National Indian Gaming Commission*,
466 F.3d 134, 138 (D.C. Cir. 2006) ................................................................................. 10

8

*Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir. 2006)................. 10

9

*Davids v. Coyhis*, 857 F. Supp. 641 (E.D. Wis. 1994)..................................................... 15

10

*Forest County Potawatomi Cmty. of Wisc. v. Doyle*,
803 F. Supp. 1526 (W.D. Wis. 1992) ....................................................................... 15,16

11

*Goodface v. Grassrope,* 708 F. 2d 335 (8th Cir. 1983) ..................................................... 7

12

*Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163 (10th Cir. 1998) ....................... 15

13

*Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (N.Y. 1928)....................................... 14

14

*In re Sac & Fox Tribe of Mississippi in Iowa*, 340 F.3d 749 (8th Cir. 2003)............. 8,9,11

15

*Seneca-Cayuga Tribe of Okla. v. Oklahoma*, 874 F.2d 709 (10th Cir. 1989)............. 15,16

16

*Syntek Semiconductor Co. v. Microchip Technology Inc.*, 307 F.3d 775
(9th Cir. 2002)............................................................................................................ 9,10

17

*Timbisha Shoshone Tribe v. Bureau of Indian Affairs,* 2003 WL 25897083,
at *1 (E.D. Cal. Apr. 10, 2003) ...................................................................................... 2,3

18

*United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483 (1983) ..................... 13

19

*Wadena v. Acting Minneapolis Area Director*, 30 IBIA 130 (1996) .................................. 7

20

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)....................... 1,13

21

### DOJ Decisions

22

*Cayuga Indian Nation of New York, Clint Halftown, Tim Twoguns,
and Gary Wheeler v. Eastern Regional Director, Bureau of Indian Affairs*,
Docket No. IBIA 12-005............................................................................................... 7

23

*Wadena v. Acting Minneapolis Area Director*, 30 IBIA 130, 145 (1996) ......................... 7

24

25

### U.S. Code

26

28 U.S.C. § 1362.................................................................................................... 1,2,5,18

25 U.S.C. § 450 *et seq.* ..................................................................................................... 6

27

28

Rosette, LLP
565 W. Chandler Boulevard
Suite 212
Chandler, Arizona  85225

iii                    Case No.: 1:14-cv-0220-AWI-SAB

**RESPONSE TO ORDER TO SHOW CAUSE**

25 U.S.C. § 2701 et seq. ................................................................................ 4
25 U.S.C. § 2702 ......................................................................................... 18
25 U.S.C. § 2703 ........................................................................................ 5,8
25 U.S.C. § 2703(5) ...................................................................................... 5
25 U.S.C. § 2710 ........................................................................................... 5
25 U.S.C. § 2710(b)(2)(a) ........................................................................... 12
25 U.S.C. § 2710(d)(3)(B) .......................................................................... 10
25 U.S.C. § 2710(d)(7)(A)(ii) .......................................................... 4,8,9,10,11,12
25 U.S.C. § 2710(d)(8)(A) ..........................................................................10
25 U.S.C. § 2713(a)(1) ................................................................................ 11
25 U.S.C. § 2713(b)(1) ................................................................................ 11
25 U.S.C. § 2713(b)(2) ................................................................................ 11
25 U.S.C. 2716(b) ....................................................................................... 11

**Secondary Sources**

COHEN'S HANDBOOK OF FEDERAL INDIAN LAW at 2 (2012  Newton, et al., eds.) .............. 5

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

iv        Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

1

**I.      INTRODUCTION**

Plaintiffs, the Picayune Rancheria of the Chukchansi Indians, a federally-recognized Indian tribe ("Tribe") and the Chukchansi Economic Development Authority ("CEDA") (collectively, "Plaintiffs"), hereby file this Response ("Response") to the Court's Order to Show Cause dated February 21, 2014.  For the reasons stated herein, Plaintiffs respectfully maintain that jurisdiction in the instant forum is proper, in light of the numerous violations of federal law at issue and, therefore, dismissal of the instant action is not appropriate under federal law and case precedent.

**II.     FACTUAL BACKGROUND**

The relevant facts supporting this Response are set forth in Plaintiff's First Amended Complaint and the Affidavit of Robert Rosette filed in the above caption matter on February 19, 2014 (Dkt. No 4) ("Rosette Aff."), and the Affidavit of Reggie Lewis In Support of First Amended Complaint, filed concurrently herewith ("Lewis Aff.").

**III.    ARGUMENT**

In its denial of Plaintiffs' ex parte application for a temporary restraining order, this Court held that Plaintiffs had failed to demonstrate a likelihood of success on the merits of their Complaint and irreparable harm under the standard set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  The Court also ordered Plaintiffs to show cause as to why their Complaint should not be dismissed for lack of subject matter jurisdiction.  For the reasons set forth below, this Court appropriately maintains subject matter jurisdiction over the instant action and Plaintiffs can demonstrate both a likelihood of success on the merits **and** irreparable harm under *Winter* to necessitate injunctive relief.

**A.  This Court Has Subject Matter Jurisdiction**

1.  Plaintiffs are the Tribe for all purposes, as recognized by the federal government, thus supporting their eligibility to bring a claim in federal court under 28 U.S.C. § 1362.

Section 1362 vests district courts with "original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the United States Department of Interior, wherein the matter in controversy arises under the

Rosette, LLP
565 W. Chandler Boulevard
Suite 212
Chandler, Arizona  85225

1                     Case No.: 1:14-cv-0220-AWI-SAB
**RESPONSE TO ORDER TO SHOW CAUSE**

Constitution, laws, or treaties of the United States."   In its Order, the Court found that jurisdiction pursuant to 28 U.S.C. § 1362 was questionable because it was "not convinced that Plaintiffs actually represent the Tribe for all purposes."  Dkt. No. 11, Order Re: Application for Temporary Restraining Order ("Order"), at 4:17.

Analogous precedent from this Court should provide a convincing basis for subject matter jurisdiction under § 1362.  In *Timbisha Shoshone Tribe v. Bureau of Indian Affairs*, Judge William B. Shubb of the Eastern District of California was presented with a lawsuit brought by an unrecognized faction of the tribe against both the Bureau of Indian Affairs ("BIA") as well as the BIA-recognized tribal council.  2003 WL 25897083, at *1 (E.D. Cal. Apr. 10, 2003).   In *Timbisha*, the Timbisha Shoshone Tribe was embroiled in a Tribal leadership dispute similar to the one facing the Picayune Rancheria of Chukchansi Indians.  The Timbisha leadership dispute involved at least two factions claiming to represent the government:  the "Kennedy Council" and the "Boland Faction."  *Id.* at *1.  Both factions had conducted an election and forwarded their results to the BIA.  In response to the leadership dispute, the BIA found that it could not recognize either faction's election, and therefore recognized the last undisputed governing body. *Id.* at *2 ("BIA policy is to recognize the tribal officials that the BIA recognized prior to the disputed election.").   "The BIA therefore recognized the Kennedy Council as the Tribe's governing body on an interim basis.  *Id.* at *2, *3.  The Boland Faction filed an appeal of the decision to recognize the Kennedy Council.

Amidst the dispute, the Boland Faction filed suit against the BIA in the United States District Court for the Eastern District of California.  ***At the time the suit was filed***, the Boland Faction's ***appeal of the BIA decision*** to recognize the Kennedy Council ***remained pending*** within the Department of the Interior.  *Id.* at *3.

Due to the leadership dispute, Judge Shubb addressed the question of which tribal faction properly could bring suit on behalf of the Tribe and, as a related matter, considered which of the factions enjoyed the Tribe's sovereign immunity from suit.  Judge Shubb first took note of the tribal leadership dispute, as well as the BIA's decision to recognize the Kennedy Council and the fact that the Boland Faction appealed that decision within the BIA and that such "appeal is still

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

2                     Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE

pending." *Id.* at *3.  Judge Shubb adhered to the BIA's interim decision to recognize the Kennedy Council, even though the BIA's decision to recognize the Kennedy Council was under appeal.  Judge Shubb therefore held that the Kennedy Council – the faction recognized by the BIA – and only the Kennedy Council, was authorized to bring a suit on behalf of the Tribe.

Here, as in *Timbisha*, the BIA has issued a decision recognizing as the governing body of the Tribe the Tribal Council that existed prior to the last undisputed election (*i.e.,* Plaintiffs in this action).  *Timbisha*, 2003 WL 25897083, at *2; *see also* February 11, 2014 Decision issued by Amy Dutschke, Regional Director, United States Bureau of Indian Affairs ("BIA Decision"), attached as Exhibit A to the Rosette Aff., at 6 ("[T]he Bureau of Indian Affairs, Pacific Region, will conduct business, on an interim basis, with the last uncontested Tribal Council elected December 2010, consisting of: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez . . . .").  Second, as in *Timbisha*, the BIA recognition here was made on an interim basis.  *Id*. at *2-3 (explaining that recognition is "until such time as the issue is resolved in accordance with the Tribe's laws").  Therefore, based on *Timbisha,* the BIA Decision is an adequate basis to find that Plaintiffs are the proper representatives to bring suit in the name of the Tribe under § 1362, even though the BIA Decision recognized Plaintiffs on an interim basis and is under appeal.

> 2.  <u>The Ayala Faction and its appointees are not the Tribe for any purpose as recognized by the Federal Government in its February 11, 2014 Decision.</u>

Not only did the BIA Decision recognize Plaintiffs as comprising the legitimate Tribal Council, but it affirmatively refused to recognize the Ayala Faction.  *See* BIA Decision at 6.  In making this decision, the BIA took into consideration extensive briefing by the Ayala Faction. The Ayala Faction was permitted to make any and all pertinent arguments and to present any relevant evidence in support of their claim that they are the legitimate governing body of the Tribe.  In its brief submitted to the BIA, the Ayala Faction——those currently in illegal control of the Casino and Casino management—explicitly urged that the federal government recognize its group as the authorized governing body of the Tribe for purposes of government to government relations with the United States.  Despite their voluminous request (which included several

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

3

Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

1    supporting exhibits and declarations), the BIA explicitly and definitively refused to recognize the

2    Ayala Faction as the authorized Tribal governing body recognized by the United States.

3          In refusing to recognize the Ayala Faction, the BIA Decision is consistent with the

4    decisions of other federal agencies. For example, on May 30, 2013, the United States

5    Department of Housing and Urban Development refused to recognize the Ayala Faction as the

6    governing body of the Tribe, and accordingly blocked their access to the HUD Line of Credit

7    Control System. *See* HUD Letter, attached as Exhibit G to Lewis Aff. On July 25, 2013, the

8    United States Environmental Protection Agency also refused to recognize the Ayala Faction,

9    denying to them funds that a legitimate tribal government would be entitled to under the Clean

10    Water Act and Clean Air Act. *See* EPA Letter, attached as Exhibit H to Lewis Aff. Likewise, on

11    September 18, 2013, the Institute of Museum and Library Services denied the Ayala Faction's

12    requests for project funding. *See* Institute of Museum and Library Services Letter, attached as

13    Exhibit I to Lewis Aff. Indeed, the Ayala Faction cannot produce a single official United States

14    document recognizing them as the legitimate Tribal Council.

15          3.  <u>Plaintiffs meet the definition of "Indian tribe" under the Indian Gaming</u>

16             <u>Regulatory Act and seek to have the Court enjoin "gaming activity" conducted in violation of the Tribal-State Compact, thus providing a basis for jurisdiction under</u>

17             <u>25 U.S.C. § 2710(d)(7)(A)(ii).</u>

18          Plaintiffs' substantive causes of action include claims that Defendants have violated the

19    Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* ("IGRA"). Section 2710(d)(7)(A)(ii) of

20    IGRA provides that "district courts shall have jurisdiction over . . . any cause of action initiated

21    by a State or Indian tribe to enjoin a Class III gaming activity . . . conducted in violation of [the

22    relevant] Tribal–State compact." The Order found that Plaintiffs do not seek to enjoin a Class III

23    gaming activity, and thus §2710(d)(7)(A)(ii) cannot serve as a basis for subject matter

24    jurisdiction. Order at 5. Plaintiffs' First Amended Complaint has resolved this issue in that it

25    now expressly alleges illegal Class III gaming activity by Defendants, and not simply acts that

26    constitute such violations.

27    …

28    …

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

4    Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

i.    Plaintiffs are an "Indian tribe" under § 2703, and thus are the only entity authorized to conduct gaming activity and bring a claim under IGRA.

Though the Order did not (nor could it) explicitly find that Plaintiffs were not the "Indian tribe" for the purposes of bringing suit under § 2710, the Court did question Plaintiffs' authority to represent the Tribe under § 1362 in relation to gaming activities. *See* Order at 4–5.

As acknowledged above, under certain circumstances, an Indian tribe may bring suit in federal court under IGRA.  The IGRA defines "Indian tribe" as "any Indian tribe, band, nation or other organized group or community of Indians which (A) is recognized as eligible **by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians**, and (B) is recognized as possessing powers of self-government."  25 U.S.C. § 2703(5) (emphasis added).

Plaintiffs plainly meet the above definition.  They constitute the United States-recognized Tribal Council and the governing body for the Tribe.  The February 11, 2014 BIA Decision, issued pursuant to authority delegated by the Secretary of the United States Department of the Interior to the BIA, was definitively clear in establishing that the United States recognizes Plaintiffs as the only authorized Tribal representatives with whom the federal government would conduct its government-to-government relationship.  It is the lone group "recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians."  25 U.S.C. § 2703(5); *see also* BIA Decision.  The Regional Director's reference, in the BIA Decision, to "government-to-government relationship" does not refer only to federal contracting purposes.  Rather, the referenced "government-to-government relationship" has become a term of art in Indian law.  As an example, one need look no further than the leading treatise on Federal Indian Law to learn that "[b]ecause of their retained sovereignty, the tribes have a 'government-to-government relationship' with the United States." COHEN'S HANDBOOK OF FEDERAL INDIAN LAW at 2 (2012   Newton, et al., eds.)  It is the maintenance of such relationship that renders Indian tribes "eligible . . . for special programs and services" pursuant to the federal government's "recogni[tion] [of Indian tribes] as possessing powers of self-government," under IGRA.  *See* 25 U.S.C. § 2703(5).  Thus, by its plain terms,

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

5                    Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

coinciding with the federal requirements contained in IGRA, the BIA Decision supports the fact that the Plaintiffs are the only Indian Tribe legally authorized to conduct Class III gaming activity pursuant to IGRA and thereby entirely excluding any argument that Defendants can legally engage in gaming activity at all.

Further, the language of the BIA Decision makes it clear that the recognition contained therein was not limited to the singular and narrow purpose of contracting under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 450 *et seq.*  Specifically, the BIA Decision reads in relevant part:

> The situation at the Picayune Rancheria of Chukchansi Indians has deteriorated to a point that recognition of a government is essential for the purpose of contracting, under the ISDEAA, ***and to prevent any further hiatus of this government-to-government relationship with the Picayune Rancheria of Chukchansi Indians***. Therefore, the Bureau of Indian Affairs, Pacific Region, will conduct business, on an interim basis, with the last uncontested Tribal Council elected December 2010, consisting of: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez, until such time as the issue is resolved in accordance with the Tribe's laws . . .

> The level of conflict to which this dispute or disputes have risen since the December 2011 election is extremely concerning to this Office . . . the dispute over the Tribe's leadership has led to ***multiple financial hardships including reported defaults on loans connected with the Tribe's gaming facility***. In addition, ***many Federal agencies have been unable to determine with whom to conduct business amidst the dispute, causing essential Tribal programs that are funded by the Federal government to cease operation, including the loss of NAHASDA funds. Due to these increasing issues there appears to be several grounds for finding it would be in the public interest to put this decision into immediate effect***.  As such, I will be filing a motion with the IBIA to place my decision into immediate effect.

(emphasis added).

The above language makes it clear that the BIA was well aware of many outside entities , including federal agencies concerned with non ISDEAA contracting and gaming purposes, which were awaiting the BIA Decision because that same BIA Decision would resolve the issue of with whom those other federal agencies were to interface on a government-to-government basis in

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

6

Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

those other contexts.  Indeed, the BIA Decision expressly cites such reliance as a basis for it to seek immediate effectiveness.  If the BIA Decision was limited solely to the issue of ISDEAA recognition, there would be no logical basis to cite the other exigent circumstances as a basis for seeking immediate effectiveness.  By way of example, as part of its effort to cause immediate effectiveness to its Decision, the BIA, recently filed an "Exigency Record" to support its Request to Make February 11, 2014 Decision Effective Immediately.  Lewis Aff, ¶ 19.  Part of the Exigency Record included a newspaper article in which Madera County officials had urged that the federal government intervene and issue a decision to resolve the Tribe's dispute in order for the County to know which entity it should be working with on a government to government basis, including in matters related to the Casino.  *See Id.*, and Exhibit K attached thereto.  Moreover, the Regional Director in her Decision also expressly noted that "*BIA* may not effectively *create* a hiatus in tribal government by . . . declining to recognize any tribal government."  Decision, at 5 (unnumbered) (citing *Goodface v. Grassrope*, 708 F. 2d 335, 338-39 (8th Cir. 1983)).  Thus, the BIA Decision established Plaintiffs as the legitimate Tribal leadership **for all purposes**, including gaming, not just for the purposes of ISDEAA contracting.

Further confirmation of the broad scope of BIA Decision is contained within the Decision itself, as well as case law cited therein.  Specifically, the BIA Decision reads in relevant part:

> In *Cayuga Indian Nation of New York, Clint Halftown, Tim Twoguns, and Gary Wheeler v. Eastern Regional Director, Bureau of Indian Affairs*, Docket No. IBIA 12-005, Order Vacating Decision, the IBIA states, '. . . at least since 1996, the Board has recognized that the BIA has the authority to make a determination on tribal leadership 'when the situation [has] deteriorated to the point that recognition of some government was *essential for Federal purposes.*' *Wadena v. Acting Minneapolis Area Director*, 30 IBIA 130, 145 (1996) . . ." (the emphasis on "essential for government purposes" is in BIA Decision, as added therein)

Thus, it is well established that the BIA has the authority to resolve tribal leadership issues—not just for ISDEAA contracting, but for *all* Federal purposes—including gaming under IGRA.  The BIA's citation to this language and its specific emphasis on "essential for Federal purposes" reiterates the fact that the BIA was not recognizing Plaintiffs for the limited and narrow purpose …

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

7                    Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

1   of ISDEAA contracting, but also for all "Federal purposes," which would include gaming under

2   IGRA.

3       Moreover, the very language of IGRA itself affirms that this Court should look to who

4   the Secretary recognizes as the Tribe's leadership through the BIA.  As described above and as

5   demonstrated in the BIA Decision, the Secretary has, through the BIA, recognized Plaintiffs as

6   the leadership for all purposes.

7           ii.   Plaintiffs seek to enjoin Class III "gaming activity," thus giving this Court
                  original jurisdiction under § 2710(d)(7)(A)(ii).

8

9       In its Order, the Court held that IGRA's grant of jurisdiction to district courts to "enjoin a

10  Class III gaming activity" conducted in violation of the Compact did not vest the Court with

11  authority to issue an injunction preventing the disbursement of gaming revenues to an entity not

12  recognized as the Tribe.  IGRA does not define "gaming activity" *see* 25 U.S.C § 2703.

13  However, Plaintiffs now seek relief that is much broader than the disbursement of gaming

14  revenues to entities or persons that are not recognized as the Tribe.

15      As clarified in Plaintiffs' First Amended Complaint, Plaintiffs seek to prevent Defendants

16  from operating the Casino and all of its Class III gaming activities in violation of the Tribal-State

17  Compact entirely.  *See* Plaintiffs' First Amended Complaint at 12–14, ¶¶ 38–56.  Occupying and

18  operating a casino offering Class III games, and distributing revenues generated from the same,

19  falls squarely within the confines of "Class III gaming activity."  The case of *In re Sac & Fox*

20  *Tribe of Mississippi in Iowa*, 340 F.3d 749 (8th Cir. 2003) is instructive on this point.  In that

21  case, an elected tribal council that had been ousted from the Tribe's casino brought suit against

22  the rival council "under § 2710(d)(7)(A)(ii) seeking an order to enjoin the [rival council] from

23  conducting gaming at the casino and to require the [rival council] to surrender physical control of

24  the Casino, its revenues, the tribal government buildings, and all bank accounts containing Tribal

25  monies."  *Id.* at 754.  The district court dismissed the claim as moot (on the basis that it had

26  granted the United States' request for an injunction enforcing the NIGC Chairman's temporary

27  closure order).  *Id.*  On appeal, the Eighth Circuit held that IGRA expressly provides jurisdiction

28  for the district court to enjoin illegal gaming and therefore "the district court should have

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

8                    Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

1  addressed the Elected Council's IGRA claim," characterizing it as one brought to enjoin, among

2  other things, illegal gaming under 25 U.S.C. § 2710(d)(7)(A)(ii).  *Id.* at 763.

3      *Sac & Fox* plainly demonstrates that a request to enjoin the operation of a casino by

4  persons not authorized to conduct gaming under IGRA falls within the ambit of "gaming

5  activity."  Here, as in *Sac & Fox*, Plaintiffs seek to enjoin the unlawful occupation of the Casino

6  and operation of Class III gaming by persons that, without dispute, have <u>never</u> been recognized

7  by the Secretary as representatives of the Tribe in accordance with IGRA.  Hence, the relief

8  sought falls within the injunctive power granted to the district court by § 2710(d)(7)(A)(ii).

9      4.  <u>Plaintiffs are not required to exhaust any administrative remedies at the National</u>
10         <u>Indian Gaming Commission.</u>

11     In its Order, the Court states a belief that the Tribe "should exhaust any remedies

12  available for violation of IGRA with the NIGC prior to seeking relief with this Court."  Order at

13  5.  Plaintiffs respectfully request reconsideration and clarification in this regard.  Although the

14  NIGC has certain enforcement mechanisms available to it to address Defendants' continued

15  violations of federal law, the NIGC does not have exclusive jurisdiction to enjoin gaming

16  activities in violation of the Tribal-State Compact, and therefore such mechanisms do not

17  preclude either Plaintiffs' request for the instant relief sought or this Court's granting of the

18  same.  *See Sac & Fox, supra* (Eighth Circuit upheld jurisdiction over the elected council's IGRA

19  claim, even though the Appeals Court's opinion plainly reflects that the elected council had

20  never invoked any administrative process before the NIGC).

21     Even assuming, *arguendo,* that the NIGC had taken formal enforcement action under

22  IGRA, the Court could still appropriately exercise jurisdiction over this case because Plaintiffs'

23  claims, as explained below, are not exclusively within the NIGC's purview.

24     Plaintiffs recognize that this Court may have taken the position it did on administrative

25  exhaustion in reliance on the doctrine of primary jurisdiction.[1]  However, this doctrine does not

---

26  [1] The doctrine of primary jurisdiction "is a prudential one, under which a court determines that an
27  otherwise cognizable claim implicates technical and policy questions that should be addressed in
    the first instance by the agency with regulatory authority over the relevant industry rather than by
    the judicial branch."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  This is
28  distinct from the requirement of exhaustion of administrative remedies.  *See Syntek*

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

9

Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE

1   apply in the instant case.

2        The Ninth Circuit generally looks to four factors when considering the applicability of the

3   doctrine of primary jurisdiction.  *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075,

4   1086–87 (9th Cir. 2006).  Based on the same, the doctrine generally applies in cases that present

5   "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of

6   an administrative body having regulatory authority, (3) pursuant to a statute that subjects an

7   industry or activity to a comprehensive regulatory scheme that (4) requires expertise or

8   uniformity in administration."  *Id.* (citation and internal quotation marks omitted).

9        This case does not satisfy the criteria for discretionary application of the primary

10  jurisdiction doctrine.  Although there is the need to resolve an issue, and while it is true that

11  IGRA subjects Class III gaming to a comprehensive regulatory scheme, the matter to be resolved

12  has not been placed exclusively within the jurisdiction of the NIGC (or any other federal agency)

13  but rather subjected to regulation by the State and Indian tribe in accordance with the applicable

14  Tribal-State Compact.  Moreover, the matter does not require the expertise of NIGC.

15                    i.   The matter to be resolved has not been placed within the exclusive jurisdiction
                           of the NIGC
16

17       Class III gaming activities are primarily regulated by the two entities—the State and the

18  Tribe—who are expressly authorized by 25 U.S.C. § 2710(d)(7)(A)(ii) to bring actions to enjoin

19  unlawful Class III gaming activity conducted in violation of a Tribal-State Compact, and that is

20  the primary means by which a State and an Indian tribe may regulate Class III gaming activities.[2]

21  The NIGC does not approve Tribal-State Compacts, the Secretary of the Interior does.  25 U.S.C.

22  § 2710(d)(3)(B) and (8)(A).  However, IGRA does not authorize the Secretary to take **any**

23  *Semiconductor Co. v. Microchip Technology Inc.*, 307 F.3d 775, 780–81 (9th Cir. 2002).

[2] *See, e.g.,* § 2710(d)(3)(A) (with respect to "a class III gaming activity is being conducted, or is
24  to be conducted," requiring an Indian tribe to negotiate with the State to enter "into a Tribal-State
    compact *governing* the conduct of gaming activities") (emphasis added); § 2710(d)(3)(B)
25  (authorizing a State and an Indian tribe to "enter into a Tribal-State compact *governing* gaming
    activities . . . .") (emphasis added); and § 270(d)(5) (providing that "*Nothing in this subsection
26  shall impair the right of an Indian tribe to regulate class III gaming . . . concurrently with the
    State*, except to the extent that such regulation is inconsistent with, or less stringent than, the State
27  laws and regulations made applicable by any Tribal-State compact entered into by the Indian tribe
    under paragraph (3) that is in effect" (emphasis added).  *See also Colorado River Indian Tribes v.
28  National Indian Gaming Commission*, 466 F.3d 134, 138 (D.C. Cir. 2006).

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630
                                        10              Case No.: 1:14-cv-0220-AWI-SAB
                               RESPONSE TO ORDER TO SHOW CAUSE

1   administrative enforcement action, and IGRA provides for only very *limited* enforcement action
2   by the NIGC.

3        Specifically, IGRA authorizes the NIGC:  (1) to "levy and collect appropriate civil fines"
4   and for "any violation of any provision of this chapter, any regulation prescribed by the [National
5   Indian Gaming] Commission pursuant to this chapter, or tribal regulations, ordinances, or
6   resolutions approved under sections 2710 or 2712 of this title[,]"  25 U.S.C. § 2713(a)(1); and (2)
7   to "order temporary closure of any Indian game for substantial violation of the provisions of this
8   chapter, of regulations prescribed by the [National Indian Gaming] Commission pursuant to this
9   chapter, or of tribal regulations, ordinances, or resolutions approved under sections 2710 or 2712
10   of this title."  25 U.S.C. § 2713(b)(1); *see also* 25 U.S.C. §§ 2713(b)(2) (authorizing temporary
11   closures to be made permanent) and 2716(b) (authorizing NIGC to provide "appropriate law
12   enforcement officials" with "information [that] indicates a violation of Federal, State, or tribal
13   statutes, ordinances, or resolutions").

14        Thus, the structure and express provisions of IGRA reflect that Congress did not intend to
15   require either a State or an Indian tribe to first seek the assistance of the NIGC before seeking to
16   enjoin unlawful gaming under § 2710(d)(7)(A)(ii).  They further reflect that neither the NIGC nor
17   the Secretary of the Interior (nor any other federal agency) has exclusive jurisdiction to provide
18   the relief the Tribe seeks in this case.  In other words, neither IGRA nor the regulations
19   promulgated under it provide any administrative process to invoke or to exhaust.  Therefore,
20   resort to any administrative process cannot be a prerequisite to a U.S. District Court exercising
21   jurisdiction under § 2710(d)(7)(A)(ii) over an action seeking to enjoin Class III gaming activities
22   conducted in violation of a Tribal-State Compact.

23        The Eighth Circuit's opinion in *Sac & Fox Tribe* is in accord.  As explained above, in that
24   case, the Eighth Circuit held that the District Court was required to entertain the suit under 25
25   U.S.C. § 2710(d)(7)(A)(ii) brought by the BIA-interim recognized representatives of the Sac and
26   Fox Tribe (the Elected Council) to enjoin unlawful gaming by an unrecognized faction of the
27   Tribe (the Appointed Council).  ***It is compelling that the Eight Circuit upheld jurisdiction over***
28   ***the Elected Council's IGRA claim, even though the Appeals Court's opinion plainly reflects***

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

11        Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

*that the Elected Council had never invoked any administrative process before the NIGC*.  And, while the Eight Circuit upheld dismissal of the Appointed Council's suit against the NIGC because the Appointed Council had failed to exhaust its administrative remedies, the Appeals Court overruled dismissal of the Elected Council's suit, ruling that it was not moot to the extent that it sought relief different from that contained in the NIGC closure order.  *In other words, not only was administrative exhaustion not required prior to the Elected Council bringing suit on behalf of the Tribe under 25 U.S.C. § 2710(d)(7)(A)(ii), but that section authorized different and additional relief—relief that NIGC was not authorized to provide.*  Accordingly, Congress did not place the matter involved in this case within the exclusive jurisdiction of the NIGC.

> ii. The matter does not require the expertise of NIGC and uniformity in administration does not justify referral of the instant issue of Tribal-State Compact violations to the NIGC.

The Ninth Circuit has recognized that the doctrine of primary jurisdiction should not be invoked to "secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit," but only if the issue "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency."  *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166 (9th Cir. 2002).  In light of the BIA Decision and applicable law, including that issuing from this District, the present issue is not one that is so complex or complicated so as to require the expert advice of the NIGC.

Specifically, though the IGRA issues presented in this case are uncommon, they are not legally novel.  In other words, disbursement of revenue to a group that has never been recognized by the Secretary as the Tribe or the legitimate Tribal Leadership for any purposes does not happen often, but when it does occur, there exists a patent violation of the Tribal-State Compact requiring no particular expertise to identify or resolve through injunctive relief.  *See* 2710(b)(2)(a) (citing that an Indian Tribe has the sole proprietary interest in gaming activity, which also necessarily includes physical control of the Casino and Casino revenue).

Even to the extent the NIGC has any jurisdiction to take action, the NIGC has not initiated formal enforcement proceedings, and because non-enforcement is within the agency's

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

12                    Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE

1    discretion, Plaintiffs cannot avail themselves of judicial review under the Administrative

2    Procedure Act.  Moreover, the violations of the Tribal-State Compact at issue here are plainly

3    apparent.  Therefore, the doctrine of primary jurisdiction is inapplicable, and the Court should

4    appropriately preside over this matter.  *See Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We

5    have no more right to decline the exercise of jurisdiction which is given, than to usurp that which

6    is not given.").

7    **B.  Plaintiffs Are Entitled To Injunctive Relief**

8            For a preliminary injunction to issue, the moving party generally must demonstrate: (1) a

9    likelihood of success on the merits, (2) the likelihood of suffering irreparable injury in the

10   absence of preliminary relief, (3) the balance of equities tips in the moving party's favor, and (4)

11   that an injunction is in the public interest.  *Winter v. Natural Resources Defense Council, Inc.*,

12   555 U.S. 7, 20 (2008).   But the Ninth Circuit has recognized that "the standard requirements for

13   equitable relief need not be satisfied when an injunction is sought to prevent the violation of a

14   federal statute which specifically provides for injunctive relief."  *Antoninetti v. Chipotle Mexican*

15   *Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010).   When such a statute exists, the Court is not

16   required to inquire into the third and fourth *Winter* factors.   This is because by passing a statute

17   that specifically provides for injunctive relief, Congress itself has exercised its judgment and

18   decided that injunctive relief is equitable and in the public interest.  *See United States v. Oakland*

19   *Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (1983) ("Courts of equity cannot, in their

20   discretion, reject the balance that Congress has struck in a statute.").  IGRA is precisely this type

21   of statute, in that it explicitly provides that a district court may enjoin gaming activity conducted

22   in violation of the applicable Tribal–State Compact.  25 U.S.C. § 2710(d)(7)(A)(ii).  Thus, the

23   Court should only consider the first two *Winter* factors.

24           1.  The IGRA violations and breach of fiduciary duty are blatant, and Plaintiffs are
             therefore likely to succeed on the merits.

25

26       As made clear by the facts set forth in Plaintiffs' First Amended Complaint and the

27   accompanying declarations, Defendants have committed several violations of IGRA and have

28   breached their fiduciary duty owed to the Tribe.

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

                                        13        Case No.: 1:14-cv-0220-AWI-SAB
                          RESPONSE TO ORDER TO SHOW CAUSE

1    The BIA Decision recognized that the Tribal Council consists of Dora Jones, Chance

2    Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez.

3    BIA Decision at 6.  Defendants have violated IGRA by preventing the federally recognized tribal

4    government from operating the Casino.  Moreover, Defendants have violated IGRA by making

5    disbursements of the Casino's Class III gaming revenues to persons that are not the federally

6    recognized representatives of the Tribe and in a manner that does not otherwise fall within the

7    permitted disbursements under IGRA, the Compact, and the Tribal Gaming Ordinance.

8    Further, Defendants have breached their fiduciary duty to the Tribe.  As managers of an

9    asset that exists solely to benefit the Tribe and its members, Defendants are in the position of

10   trustees, and consequently have a fiduciary duty to manage the trust corpus (i.e., the Casino) in a

11   manner so as to benefit the trust beneficiary (i.e., the Tribe and its members).  Justice Benjamin

12   Cardozo succinctly captured this duty, writing

> many forms of conduct permissible in a workaday world for those
> acting at arm's length, are forbidden to those bound by fiduciary
> ties. A trustee is held to something stricter than the morals of the
> market place. Not honesty alone, but the punctilio of an honor the
> most sensitive, is then the standard of behavior. As to this there
> has developed a tradition that is unbending and inveterate.
> Uncompromising rigidity has been the attitude of courts of equity
> when petitioned to undermine the rule of undivided loyalty by the
> 'disintegrating erosion' of particular exceptions . . ..  Only thus
> has the level of conduct for fiduciaries been kept at a level higher
> than that trodden by the crowd.  It will not consciously be lowered
> by any judgment of this court.

20   *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (N.Y. 1928) (citations omitted).  By

21   making illegal disbursements of Casino revenues in violation of IGRA, and by endangering the

22   successful operation of the Casino in general, Defendants have breached this duty.  Such actions

23   not only immediately harm the Tribe and its members vis-à-vis lost revenues, but also threaten

24   further harm via a closure order from the NIGC, or worse yet, harm to the public in connection

25   with the operation of an essentially unregulated Class III gaming establishment.

26   …

27   …

28   …

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

14        Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE

1

2     **2.  Recovery of funds after disbursal would be impossible, and Plaintiffs have
      therefore demonstrated that absent injunctive relief, they will suffer irreparable
      harm.**

3         Significant interference with tribal self-governance is sufficient to establish irreparable

4     harm for the purpose of a request for injunctive relief.  *See Seneca-Cayuga Tribe of Okla. v.*

5     *Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989); *see also Kiowa Indian Tribe of Okla. v. Hoover*,

6     150 F.3d 1163, 1171–72 (10th Cir. 1998) (finding an impending theft of tribal assets a threat of

7     irreparable harm sufficient to establish the need for injunctive relief).  The funds at issue and

8     those generated by the Casino's Class III gaming activities are vital to the Tribe's continued

9     operation of its various governmental and social programs benefiting its more than 900 Tribal

10    members.  An injunction to prevent the impending theft of tribal assets "promotes the paramount

11    federal policy that Indians develop independent sources of income and strong self-government."

12    *Seneca-Cayuga*, 874 F.2d at 716.  These governmental and social welfare programs, as funded

13    through independent sources of income (primarily the revenues generated by Class III gaming at

14    the Casino) are the pinnacle of a strong self-government.  Without these funds, the Tribe is

15    essentially crippled in its ability to run them.  Further, when denial of injunctive relief would in

16    effect "encourage a coup d'état," the threat of irreparable injury is clear, and an injunction is

17    required.  *See Davids v. Coyhis*, 857 F. Supp. 641, 647 (E.D. Wis. 1994).  A coup d'état has

18    occurred and continues in largest part because of the Tribe's Class III gaming revenues that the

19    rogue faction is able to siphon off of the Casino.  Absent action by this Court (under the authority

20    and protection of IGRA, the BIA Decision and the Compact), Defendants will undoubtedly

21    continue their illegal actions indefinitely, posing harm to the Tribe as well as to the public, and

22    undermining strong public policies surrounding lawful Class III gaming activities.

23         Even when it is theoretically possible to recover lost revenues, that possibility does not

24    negate the fact that the injury suffered *as a result of* lost revenues may be irreversible.  *See*

25    *Forest County Potawatomi Cmty. of Wisc. v. Doyle*, 803 F. Supp. 1526, 1536–37 (W.D. Wis.

26    1992) (noting that "[i]f basic [tribal] services and school programs are reduced in the next few

27    months, no amount of subsequent monetary recovery can recoup the loss to the community").

28

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

15     Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

1    Here, it may be theoretically possible to recover the funds unlawfully disbursed by

2    Defendants.  However, as a practical matter, such recovery is no more than virtually impossible,

3    at best.  Those efforts would likely entail drawn out investigations into who received the funds,

4    how much they received, and what the recipients, in turn, did with the funds.  That investigation

5    will undoubtedly be hampered by uncooperative witnesses and non-existent documentation since

6    many of the distributions have been and continue to be issued in cash.  Further, the simple

7    volume of such revenues is staggering – more than $315,000 on one occasion alone, which was

8    only identified because of an alleged "mistake."  Finally, the amount of funds that are being

9    unlawfully disbursed is far in excess of what any of the individual Defendants could reasonably

10   produce or repay from their own assets.  They are, in effect, judgment proof.

11   The vital importance of Casino revenues and the benefits tribal members receive from

12   these revenues cannot be emphasized enough.  Like the tribes in *Forest County* and *Seneca-*

13   *Cayuga*, Plaintiffs here utilize Casino revenues to offer multiple services to tribal members.

14   These services include programs such as education scholarships, health benefits, senior

15   citizen/elder programs (e.g., delivery of hot and nutritious meals to those who are not able to

16   leave their homes) and other social welfare programs.  *See* Lewis Aff, ¶¶ 21-24, 27, 28; *see also*

17   Affidavit of Dominique Carrillo, Affidavit of Johnathan Morris, and Affidavit of Suzanna Kate

18   Bushman, each filed herewith.   Once these programs are cut, the resulting damage can be

19   permanent.  For example, if a tribal member can no longer afford to go to school, he may drop

20   out.  And by the time scholarship money is again available, he may, for whatever reason, be

21   unable to attend school again or may suffer some other permanent academic injury.  Similarly,

22   cessation of the Tribes "meals on wheels" program could be immediately catastrophic to Tribal

23   elders and others that are not able to leave their homes to shop for groceries and obtain nutritious

24   meals.

25   Because as a practical matter the loss of Casino revenue causes permanent damage, the

26   Court should recognize that there is a real threat of irreparable injury here.  Hence, injunctive

27   relief is appropriate.

28   …

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

16       Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE

3.  <u>The Court need not balance the equities, but even if it did, the equities tip in favor of granting the requested injunctive relief.</u>

As explained above, the Court should not balance the equities before issuing preliminary injunctive relief, because Congress has already balanced the equities through statute and in providing district courts with the statutory power to issue injunctive relief to address violations of IGRA and the Tribal-State Compact.  Nevertheless, if the Court chooses to examine this factor, it should find that the equities tip in favor of granting the requested injunctive relief.

If the Court refuses to issue an injunction, there will be nothing to stop Defendants from making further illegal disbursements of Casino revenues or continuing to generally operate the Casino and its Class III gaming activities in violation of IGRA and the Tribal-State Compact and in an essentially unregulated manner.   Again, once disbursed, these revenues cannot be reasonably recovered, causing Plaintiff to suffer irreparable harm.  Plaintiff uses these revenues to fund important tribal government operations and social welfare programs for tribal members. *See* Lewis Aff, ¶¶ 21-24, 27, 28; *see also* Affidavit of Dominique Carrillo, Affidavit of Johnathan Morris, and Affidavit of Suzanna Kate Bushman, each filed herewith.  Defendants have no authority or legal right to disburse these funds and each such illegal disbursement depletes the Tribe's ability and responsibility to fund important tribal government operations and social welfare programs for Tribal members.  Moreover, each illegal disbursement is done by a group that has no legal authority to do so because they have <u>never</u> been recognized by the Secretary as the Tribe or the legitimate Tribal leadership and is also done in a context where there is absolutely no accounting or accountability for how those Class III funds are used.  Both acts implicate violations of IGRA, violations of the Tribal-State Compact, and violations of fundamental public policy surrounding lawful Class III gaming.  Thus, the equities tip in favor of issuing an injunction.

4.  <u>The Court need not weigh the public interest, but even if it did, the public interest would weigh in favor of granting the requested injunctive relief.</u>

Again, the Court should not weigh the public interest before issuing preliminary injunctive relief, because Congress has already affirmed the public interest that is now

17        Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

1   undermined by Defendant's actions in providing district courts with the statutory power to issue

2   injunctive relief to address violations of IGRA and the Tribal-State Compact.  To identify the

3   public interest issues at stake, the Court may look to Congress's stated purpose in passing IGRA.

4   The purpose of IGRA is twofold: it is meant to (1) "promot[e] tribal economic development, self-

5   sufficiency, and strong tribal governments," and (2) "shield [Indian gaming] from organized

6   crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of

7   the gaming operation, and to assure gaming is conducted fairly and honestly by both the operator

8   and the player."  25 U.S.C. § 2702.

9        Both of these purposes would be served by granting the requested injunctive relief.

10   Conversely, both purposes are directly and immediately undermined by allowing Defendants to

11   continue in their established illegal course of action.  However, by issuing the injunction, the

12   Court will ensure that the Tribe is the "primary beneficiary of the gaming operation."  The

13   appropriate distribution of gaming revenues will, in turn, promote tribal economic development,

14   self-government, and stability.  Moreover, by ensuring that the Casino is run pursuant to the laws

15   of the Tribe, the Court will be promoting strong tribal governments and safe, properly regulated,

16   Class III gaming opportunities for the public and the employment opportunities and ancillary

17   benefits that flow therefrom.  For all of these reasons, an injunction would serve the public

18   interest.

19   **IV.**     **CONCLUSION**

20        Based on the foregoing, this Court maintains subject matter jurisdiction over the instant

21   action and Plaintiffs' request for injunctive relief should be expeditiously granted.  Plaintiffs

22   represent the federally recognized Tribal Council and are therefore entitled to bring suit in the

23   name of the Tribe under 28 U.S.C. § 1362.  As the federally recognized Tribal Council, Plaintiffs

24   may also bring suit, as an "Indian tribe" under IGRA to seek to enjoin gaming activity that is

25   conducted in violation of the Tribal–State Compact.  Moreover, because the NIGC has not yet

26   initiated formal enforcement actions under IGRA, and because the doctrine of primary

27   jurisdiction does not apply, Plaintiffs are not required to first seek relief from the NIGC.

28   …

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

18        Case No.: 1:14-cv-0220-AWI-SAB

RESPONSE TO ORDER TO SHOW CAUSE

Plaintiffs have also demonstrated that they satisfy the appropriate standard for the issuance of a preliminary injunction.  Accordingly, the Court need not consider the balancing of the equities or the public interest—Congress has already done so and statutorily declared that both tilt in favor of Plaintiffs' request for injunctive relief.  But under any formulation of the *Winter* standard, Plaintiffs are deserving of the injunction.  Defendants have blatantly violated IGRA and breached their fiduciary duties to the Tribe.  Without injunctive relief, Defendants will continue to conduct Class III gaming in violation of IGRA and the Tribal-State Compact through their exercise of physical control over the Casino and Casino revenues, and will continue to disburse Casino revenues in violation of IGRA and the Tribal-State Compact and in breach of their fiduciary duties.  These funds cannot reasonably be recovered and will not be available for the Tribe to fund important tribal government operations and social welfare programs for tribal members.  The equities tip in favor of Plaintiffs because the funds are used to provide critical tribal government services; and issuing the injunction will serve the dual purposes of IGRA, promoting tribal economic development and ensuring that the tribe is the primary beneficiary of the Casino.  In addition, Defendants' illegal operation of the Tribe's Class III gaming facility threatens not only the safety and welfare of the Casino patrons, but also the safety and welfare of the many employees who work in the Casino and the various independent businesses that provide services to the Casino and rely on patron traffic for their own economic survival.

For the foregoing reasons, and on the applicable statutory, regulatory, contractual, and common law authorities, this Court has a significant opportunity and should find that it has jurisdiction to hear this case  and issue injunctive relief in favor of Plaintiffs.

Dated:  February 28, 2014

RESPECTFULLY SUBMITTED,

ROSETTE, LLP

/s/ Robert A. Rosette
Robert A. Rosette
Geoff Hash
193 Blue Ravine Rd., Suite 255
Folsom, California 95630
Telephone: (916) 353-1084
Attorneys for Plaintiffs

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

19          Case No.: 1:14-cv-0220-AWI-SAB
RESPONSE TO ORDER TO SHOW CAUSE