Robert A. Rosette (CA SBN 224437)
Geoffrey Hash (CA SBN 227223)
ROSETTE, LLP
193 Blue Ravine Rd., Suite 255
Folsom, California 95630
Telephone: (916) 353-1084
Facsimile: (916) 353-1085
rosette@rosettelaw.com
ghash@rosettelaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**THE PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS**, a Federally recognized Indian Tribe; **CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY** a wholly owned, unincorporated entity of the Tribe,

Plaintiffs,

vs.

**GIFFEN TAN,** an individual; **JOYCE MARKLE,** an individual; **LARRY KING,** an individual; **TED ATKINS**, an individual; **TEX MCDONALD**, an individual; **VERNON KING**, an individual; **LYNDA APPLING**, an individual; **DONNA FEATHERSTONE**, an individual; **AMANDA RAMIREZ**, an individual; **CHARLES SARGOSA**, an individual; **NANCY AYALA**, an individual; **DYANN ECKSTEIN**, an individual; **JOSEPH AYALA**, an individual; **JOSHUA ATKINS**, an individual; **MIKE RAMIREZ**, an individual; **DAVID WORKS, III**, an individual; **KHAMMY CHHOM**, an individual;  **JOHN AND JANE DOES 1-20**; **XYZ CORPORATIONS 1-20,**

Defendants.

Case No.: 1:14-cv-0220-AWI-SAB

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**

Date:
Time:
Courtroom:

Honorable Anthony W. Ishii

**INTRODUCTION**

The Picayune Rancheria of the Chukchansi Indians, a federally recognized Indian tribe, ("the Tribe") and the Chukchansi Economic Development Authority ("CEDA" or "Authority"), a wholly owned unincorporated entity of the Tribe (the Tribe and CEDA are hereafter collectively referred to as the "Plaintiffs"), acting through and on the authority of the Tribal Council recognized by the United States on February 11, 2014 ("United States-Recognized Tribal Council"),[1] hereby file this First Amended Complaint asking that this Court award injunctive relief.  Specifically, Plaintiffs seek injunctive relief from the Court to enjoin all persons, including, but not limited to, the Chukchansi Gold Resort and Casino's ("the Casino") current management team (which includes Interim General Manager Giffen Tan, Interim General Accounting Manager Joyce Markle, Interim Chief Financial Officer Larry King, and Casino Director of Security Ted Adkins), as well as Defendants Tex McDonald, Vernon King, Linda Appling, Donna Featherstone, Amanda Ramirez, Charles Sargosa, Dyann Eckstein, Joseph Ayala, Joshua Atkins, Mike Ramirez, David Works, III, Khammy Chhom, and certain unidentified individuals and entities whom will be identified through discovery (collectively referred to herein as the "Defendants"), from conducting Class III gaming at the Casino in violation of federal law, Tribal law, and the Gaming Compact between the State of California and the Tribe ("Tribal-State Compact"), and to further require the Defendants to surrender physical control of the Casino and of Casino revenues to the governing body of the Tribe that is recognized as eligible by the Secretary of the United States Department of the Interior, who has in turn delegated his authority to the Assistant Secretary of the United States Bureau of Indian Affairs (hereafter simply referred to as "Secretary"), for the special programs and services provided by the United States to Indians. Such injunctive relief should also enjoin Defendants from making, directing, or authorizing, in any fashion, any and all Tribal governmental distributions of Casino revenue to any person or entity that is not either itself recognized by the Secretary as part of the governing body of the

---

[1] Comprised of the following persons serving and acting in their official capacities as members of that Council: Reggie Lewis, Dora Jones, Morris Reid, Chance Alberta, Nokomis Hernandez, Jennifer Stanley, and Nancy Ayala.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

Tribe or acting on the authority of such a Secretary-recognized governing body of the Tribe.

Such relief is imperative because Defendants cannot show that they are an "Indian tribe, band, nation, or other organized group or community of Indians which *is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians* because of their status as Indians, and [that they are] recognized as possessing powers of self-government", a status that they must clearly have before they can legally engage in gaming activity pursuant to the Indian Gaming Regulatory Act ("IGRA").  *See* 25 U.S.C. § 2703. Only a federally recognized tribe or tribal entity may operate, regulate, and have the sole proprietary interest in a tribe's gaming facility. *See* 25 U.S.C. § 2710 (b)(2)(A).

Despite the clear requirements of IGRA, the Defendants continue to exercise physical control over the Casino and the Casino's revenues, Defendants Ted Adkins, Tex McDonald, Vernon King, Linda Appling, Donna Featherstone, Amanda Ramirez, Charles Sargosa, Dyann Eckstein, Joseph Ayala, Joshua Atkins, Mike Ramirez, David Works, III, and Khammy Chhom continue to prevent the lawful Tribal Government from accessing the Casino in order to ensure proper operation and regulation, and Defendants Tan, Markle, and King continue to disburse Casino revenues in contravention of the IGRA, the Tribal-State Compact, and the Tribe's Gaming Ordinance.[2]  Such illegal physical control, operations, failure to regulate, and disbursements of Casino property and revenue have occurred even as recently as February 13, 2014, when Defendants Tan, Markle, and King disbursed Casino revenues to individuals who are not an Indian Tribe nor acting on the authority of an Indian Tribe, and are therefore not entitled to conduct such gaming activity or receive the revenue generated from such activity.  The illegal disbursements of Casino revenue will quickly climb into the millions of dollars if not stopped immediately.

These violations of federal and Tribal law, as well as the Tribal-State Compact, constitute an unlawful seizure of Casino and Tribal assets and will cause certain and severe harm to

---

[2] There are several significant IGRA violations that have occurred since February 21, 2013 including, but not limited to, the Tribe's failure to submit audited financials for 2012 and its failure to submit quarterly fees and fee worksheets.

Plaintiffs because assets of the Tribe are going to an unrecognized entity and, once disbursed, cannot be recovered, could result in violations of the Tribal-State Compact with the state of California, could jeopardize the Casino's financing, and will likely subject the Tribe to regulatory sanctions from the NIGC in the form of fines, notices of violations, and possible Casino closure. Courts have found that the seizure of tribal assets is sufficient, as a matter of law, to demonstrate irreparable harm for purposes of issuing a preliminary injunction. *See Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171-72 (10th Cir. 1998) (citing *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 716 (10th Cir. 1989) (holding that the seizure of tribal assets "significantly interferes with the Tribe's self-government").

It is beyond question that under the IGRA, the Tribal–State Compact, and the Tribal Gaming Ordinance, Defendants are prohibited from exercising physical control over the Casino and Casino revenues because they are not "recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians because of their status as Indians," and therefore "recognized by the United States as possessing powers of self-government." 25 U.S.C. § 2703(5).

As a general rule, prior to awarding a plaintiff preliminary injunctive relief or the issuance of a temporary restraining order, the court must find that a plaintiff has demonstrated that; (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest (the "Winter factors"). *See Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th cir. 2009) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)). Here, the Plaintiffs are likely to succeed on the merits because they can show that Defendants have exercised and continue to exercise physical control over the Casino and the Casino revenue in contravention of the IGRA and that disbursement to persons and entities not recognized by the United States will result in a permanent dispossession of Tribal assets—to the detriment of approximately 900 Tribal members and with the likely reality that the Tribe could not recover such significant amounts against individuals with no authority and who are likely

judgment proof against full recovery of the damages in subsequent actions once such individuals are identified, if ever.  Plaintiffs can also show that without preliminary injunctive relief, they will suffer the irreparable harm of their inability to fund and provide important services to tribal members, such as education scholarships, health benefits, and other social welfare programs.

Moreover, were Plaintiffs required to satisfy the additional two *Winter* factors, they could show that the balance of equities tips in their favor and that injunctive relief serves the public interest, but the Ninth Circuit has recognized that "the standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief."  *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010).  When such a statute exists, the Court is not required to inquire into the third and fourth *Winter* factors because by passing a statute that specifically provides for injunctive relief, Congress itself has exercised its judgment and decided that injunctive relief is equitable and serves the public interest.  *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (1983) ("Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute.").  IGRA is precisely this type of statute, in that it explicitly provides that a district court may enjoin gaming activity conducted in violation of the applicable Tribal–State Compact.  25 U.S.C. § 2710(d)(7)(A)(ii).  *See In re Sac & Fox Tribe of Mississippi in Iowa*, 340 F.3d 749, 763 (8th Cir. 2003) ("*Sac & Fox*").  Thus, the Court should only consider the first two *Winter* factors required for an award of preliminary injunctive relief.

Injunctive relief is necessary to prevent irreparable harm from occurring.  Specifically, Plaintiff's request that this Court restrain Defendants, more so any person or entity that is not the United States recognized Indian Tribe, as that term is defined under IGRA, from engaging in Class III gaming, including the occupation and control of the Casino and the exercise of any control over Casino revenue.

…

…

**PARTIES**

1.      Plaintiff Picayune Rancheria of the Chukchansi Indians is a federally recognized Indian Tribe, located in Coarsegold, California, governed through the members of the Tribe's Tribal Council that are recognized by the United States Department of Interior, Bureau of Indian Affairs ("United States-recognized Tribal Council").

2.      Plaintiff the Chukchansi Economic Development Authority is a wholly owned, unincorporated entity of the Tribe operating as an arm of the Tribe.  CEDA owns and operates the Casino and the membership of its governing Board is a mirror image of the United States Recognized Tribal Council.

3.      Defendant Giffen Tan proclaims himself to be acting as the Interim General Manager of the Casino.

4.      Defendant Joyce Markle proclaims herself to be acting as the Interim General Accounting Manager of the Casino.

5.      Defendant Larry King proclaims himself to be acting as the Interim Chief Financial Officer of the Casino.

6.      Defendant Ted Atkins, a management employee of the Casino,  proclaims himself to be acting as the Director of Security for the Casino.

7.      Defendant Tex McDonald, an individual member of the Tribe, proclaims himself to be the Vice Chairman and Acting Chairman of the Ayala Faction Tribal Council.

8.      Defendant Vernon King, an individual member of the Tribe, proclaims himself to be the Treasurer of the Ayala Faction Tribal Council.

9.      Defendant Lynda Appling, an individual member of the Tribe, proclaims herself to be the Secretary of the Ayala Faction Tribal Council.

10.      Defendant Donna Featherstone, an individual member of the Tribe, proclaims herself to be a member of the Ayala Faction Tribal Council.

11.      Defendant Amanda Ramirez, an individual member of the Tribe, proclaims herself to a member of the Ayala Faction Tribal Council.

12.     Defendant Charles Sargosa, an individual member of the Tribe, proclaims himself to be a member of the Ayala Faction Tribal Council.

13.     Defendant Nancy Ayala, an individual member of the Tribe, proclaims herself as Chairwoman of the Ayala Faction Tribal Council.

14.     Dyann Eckstein, an individual member of the Tribe, proclaims herself to be the Chairperson of the Ayala Faction's Gaming Commission.

15.     Joseph Ayala, an individual member of the Tribe, proclaims himself to be the Vice-Chairman of the Ayala Faction's Gaming Commission.

16.     David Works, III, an individual member of the Tribe, proclaims himself to be the Treasurer of the Ayala Faction's Gaming Commission.

17.     Joshua Atkins, an individual member of the Tribe, proclaims himself to be the Secretary of the Ayala Faction's Gaming Commission.

18.     Mike Ramirez, an individual member of the Tribe, proclaims himself to be a Member of the Ayala Faction's Gaming Commission.

19.     Khammy Chhom, an individual, proclaims herself to be the Executive Director of the Ayala Faction's Gaming Commission.

20.     Defendants John and Jane Does 1-20 and XYZ Corporations 1-20 are certain unidentified individuals and entities who will be identified through discovery.

**JURISDICTION AND VENUE**

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1362, in that the issues before this Court raise several federal questions and are brought by the Tribe's Tribal council that the United States, through the BIA, has recognized, even on an interim basis. *See Timbisha Shoshone Tribe v. Bureau of Indian Affairs*, 2003 WL 25897083, *3 (E.D. Cal. Apr. 10, 2003)  (holding that an interim recognized body can sue under § 1362).

22.     Additionally, the district court has jurisdiction over "any cause of action initiated by a State or Indian tribe to enjoin class III gaming activity located on Indian lands and

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

conducted in violation of any Tribal–State compact" pursuant to IGRA, 25 U.S.C. § 2710(d)(7)(A)(ii).

23.     Moreover, this case centers on the illegal disbursement of revenues earned by a Casino operating pursuant to IGRA.  IGRA has been found to have "extraordinary preemptive power" such that it encompasses *all* claims—whether or not those claims are traditionally federal—that concern interference with tribal governance of gaming.  *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996); *see also Rumsey Indian Rancheria of Wintun Indians of Cal. v. Dickstein*, No. 2:07-cv-02412-GEB-EFB, 2008 WL 648541 (E.D. Cal. Mar. 5, 2008).  Though complete preemption is usually asserted by state-court defendants for the purposes of removal, the Supreme Court has approved its use in an originally-filed complaint.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 n.8 (1987) (characterizing *Oneida Indian Nation of N.Y. v. Oneida County, N.Y.*, 414 U.S. 661, 670 (1974), as holding that a state-law complaint presenting an Indian land claim necessarily "arises under federal law").

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant(s) reside in or operate in this District and have committed a substantial part of the acts alleged in this District.

## FACTUAL ALLEGATIONS

25.     The Tribe is a federally recognized Indian tribe with the powers of sovereignty, self-governance, and governmental decision-making.  The Tribe is governed by a Constitution adopted in 1988, along with various duly-enacted ordinances, regulations, policies, and bylaws. The Tribe's Constitution grants the seven-member Tribal Council broad governing authority to carry out its powers. (A true and correct copy of the Tribal Constitution  is attached as Exhibit A to the Affidavit of Reginald Lewis in Support of First Amended Complaint ("Lewis Aff.").

26.     On or around June 15, 2001, the Tribal Council passed Resolution No. 2001-11, which enacted an ordinance establishing and governing CEDA (the "CEDA Establishing Ordinance").  The CEDA Establishing Ordinance sets forth the composition of the Board of Directors of CEDA (the "CEDA Board") as the sitting members of the federally-recognized

Tribal Council.  Thus, the members of the CEDA Board and the Tribal Council are identical. (A true and correct copy of the Resolution No. 2001-11 is attached as Exhibit D to the Lewis Aff.)

27.    The CEDA Establishing Ordinance granted CEDA the power to own and operate the Casino, which opened in 2003 for the benefit of the Tribe and its membership.

28.    The Tribe established the Tribal Gaming commission on or about 2003 (the "Gaming commission" or "TGC").  The Gaming Commission is an independent regulatory body tasked with ensuring the Casino's compliance with Tribal and federal law and the mandates of the Compact.  The Tribe established the TGC in order to ensure compliance with (i) the federal Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*; (ii) Minimum Internal Control Standards governing Class III gaming as established by the National Indian Gaming Commission ("NIGC"), the regulatory body established pursuant to IGRA; (iii) the Tribal-State Compact, a prerequisite to conducting Class III gaming pursuant to IGRA; (iv) the Tribal Gaming Ordinance (the "Tribal Gaming Ordinance"); and (v) other related regulations.  The Gaming Commission is an independent regulatory body tasked with ensuring the Casino's compliance with Tribal and federal law and the mandates of the Compact.  Through its regulatory duties, the Gaming Commission is responsible for the preservation of public health and safety, protection of gaming integrity and protection of Tribal gaming assets among other duties, and ensuring the Tribe's compliance with the above-referenced laws and agreements that govern Class III gaming. *See*  Lewis Aff., Exhibit B, Tribal Gaming Ordinance §1.2.

29.    In May 2012, the Tribe, intending to refinance the debt that it incurred to build the Casino and to make certain capital improvements, issued certain secured notes pursuant to an Indenture dated May 30, 2012 ("Indenture"). Lewis Aff. at ¶ 9.   The Indenture requires that CEDA and the Tribe's membership maintain the sole proprietary interest in the Casino and its revenues. *Id.*   Thus, Casino revenues belong to CEDA and the Tribe's membership. *Id.*   Pursuant to its obligations under the Indenture, CEDA makes interest payments to its creditors. *Id.* However, the Tribe is the primary beneficiary of the Casino. *Id.*

…

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

30.     In July 2012, a small group of individuals comprised of the Ramirez family members (who feel that they should be the only enrolled members of the Tribe) filed a motion in the U.S. District Court for the Northern District of California (the "Northern District") asking that the Court determine that the Tribe consisted of just 46 members, many of whom are related to Tribal member Nancy Ayala, former Chairwoman of the Tribe and current figurehead of the Ayala Faction. Lewis Aff. at ¶ 10.   However, Tribal law and records make clear that the Tribe is comprised of over 900 members. Lewis Aff. at ¶ 21.   On December 13, 2012, the Northern District denied the requested relief, characterizing it as an attempt to "unwind more than twenty years of tribal governance" by whittling the Tribe down to 46 members.   The District Court further noted that the Tribe consisted of the political entity that "the [Bureau of Indian Affairs] BIA had recognized and dealt with [as] the Tribe's governing body since 1989".   *See Tillie Hardwick, et al., v. U.S.,* Case No. 5:79-cv-1710-JF (Order, dated December 13, 2012), (a true and correct copy of the *Tillie Hardwick* order is attached as Exhibit E to the Lewis Aff.)

31.     On February 21, 2013, the Tribe held a Business Meeting at the Tribal offices and at that meeting then-Tribal Chairwoman Nancy Ayala unilaterally accepted an improperly presented "referendum" that, similar to the claims that the Ramirez family had just lost in the Northern District court, specifically, those claims that just 46 people were the only "qualified" members of the Tribe. Lewis Aff. at ¶ 11.   Ayala thereafter attempted to disenroll nearly 850 duly-enrolled Tribal members by accepting an illegal and invalid "referendum" proffered by her family.  *Id.*   The "referendum" also purported to remove all members of the Tribal Council, *except Nancy Ayala*, including Reggie Lewis, Chance Alberta, Carl "Buzz" Bushman, Tracey Brechbuehl, Karen Wynn, and Charles Sargosa on the grounds that only members of the Ramirez and Wyatt families should serve on the Tribal Council, and that every member of the Tribal Council except for Ayala were supposedly ineligible for membership per the "referendum." *Id.* In blatant disregard and violation of Tribal law, Nancy Ayala then purported to "appoint" her own family members and members of the Ramirez family to a "provisional tribal council." Lewis Aff. at ¶ 12.   She also improperly moved to accept the "referendum," and illegally and unilaterally

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

approved the "referendum." *Id.*   A group of family members and supporters loyal to Ayala - the "Ayala Faction – created a hostile and intimidating environment that night and have continued to do so thereafter, in effort to help further the illegal agenda held by the Wyatt and Ramirez families, which was already rejected by the Northern District. *Id.*

32.   As the result of the Ayala Faction's illegal coup, there are now two entities claiming to be the Tribal Council and the TGC: on the one hand, the United States recognized Tribal Council, chaired by Reggie Lewis, (as recognized on February 11, 2014 and as explained in Paragraph 44 below), and with the Tribal Gaming Commission chaired by Shannon Williams, and on the other hand, the "Ayala Faction" which consists of Defendants Tex McDonald, Nancy Ayala (suspended by her own purported tribal council), Vernon King, Linda Appling, Donna Featherstone, Amanda Ramirez, and Charles Sargosa and their "tribal gaming commission" which consists of Defendants Dyann Eckstein, Joseph Ayala, Joshua Atkins, Mike Ramirez, David Works, III, as purported members and Khammy Chhom as its purported Executive Director. *See* Lewis Aff. at ¶ 14.

33.   The IGRA, the Tribal-State Compact, and the Tribal Gaming Ordinance require that employees of the Casino must pass background checks, and specifically require an adequate system whereby gaming licenses are not issued by any gaming commission to applicants whose prior activities, criminal record, reputation, habits and associations pose a threat to public interest, or to the effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices and methods and activities in the conduct of gaming. *See* 25 U.S.C. 2710(b)(2)(F)(ii)(I)-(II) and 25 CFR Part 556.4.

34.   The Tribal-State Compact requires that the Tribe must ensure that Picayune Rancheria Tribal Gaming Commission Members ("Commissioner") are free from corruption, undue influence, compromise, and conflicting interests before they become Commissioners and as they conduct their duties under the Tribal-State Compact. *See* Tribal-State Compact, § 8.3(a). The Tribe is required to conduct background investigations on prospective Commissioners, much like it is also required to conduct background investigations on Casino employees. *See* Lewis

Aff., Ex. B., Tribal Gaming Ordinance § 4.10.5.   The Tribe must remove from duty any Commissioner who is found to have acted in a corrupt or compromised manner.  *See* Lewis Aff., Ex. C., Tribal-State Compact at § 8.3(b).

35.    On February 21, 2013, the Ayala Faction seized physical control of the Casino, hired known gang members and individuals with significant criminal histories to serve as security (*see* criminal history records of Ayala Faction Casino Security, true and correct copies of which are attached as Ex. F  to the Lewis Aff.), and used its purported gaming commission all in concert to exclude the Tribal Council chaired by Reggie Lewis as well as all of the Tribal Members and other employees, attorneys, and persons that the Ayala Faction sees as a threat to its continued illegal control of the Casino.  *See* Lewis Aff. at ¶ 13.  The Ayala Faction continues to exercise control over the illegitimate gaming commission and its purported Casino security, led by Ted Atkins, and uses those agencies to threaten and intimidate individual Tribal members, including banning from the Casino the members of the United States- Recognized Tribal Council, and numerous Tribal Members and affiliated partners who are unsympathetic to the Ayala Faction. *Id;*

36.    Individuals acting completely at the whim of the Ayala Faction and its purported gaming commission and the Executive Director, Dyann Eckstein, are Defendants Giffen Tan, Joyce Markle, Larry King, and Ted Atkins who maintain, support, and strengthen the Ayala Faction's chokehold over the Casino by engaging in various conduct, including the distribution of Casino revenues to the Ayala Faction in contravention of IGRA, the Tribal-State Compact, the Tribal Gaming Ordinance, and the express direction of the General Council. *See* Lewis Aff. at ¶ 15.

37.    Defendants Tan, Markle, King and Atkins, individually and collectively, as Casino Management, have a duty and responsibility, expressed in part as a fiduciary duty, to ensure that the Casino and all Class III gaming activity is run responsibly and in compliance with all applicable laws. 25 U.S.C. § 2710(b)(2)(A).    A breach of such duty would include Defendants' act of disbursing Casino revenue which is earmarked for the Tribe to any person or entity that is …

1   not either recognized by the United States as the Tribe or acting on the authority of the Tribe as

2   recognized by the United States. 25 U.S.C. § 2703(5).

3          38.     For any persons or entities to lawfully conduct Class III gaming pursuant to IGRA,

4   such persons or entities must be an Indian tribe as that term is defined under the Act.

5   Specifically, the IGRA defines an Indian tribe as "any Indian tribe, band, nation, or other

6   organized group or community of Indians which, (A) is recognized as eligible by the Secretary

7   for the special programs and services provided by the United States to Indians because of their

8   status as Indians, and (B) is recognized as possessing powers of self-government."  25 U.S.C. §

9   2703(5).

10         39.     IGRA also provides that an Indian tribe is required to "have sole proprietary

11  interest and responsibility for the conduct of any gaming activity."  25 U.S.C. § 2710(b)(2)(A).

12         40.     IGRA further requires that net revenues from any tribal gaming are to be used for

13  only the following purposes: (1) to fund tribal government operations or programs; (2) to provide

14  for the general welfare of the Indian Tribe and its members;  or (3) to promote tribal economic

15  development.[3] 25 U.S.C. § 2710(d).

16         41.     The IGRA requires Class III gaming to be conducted in compliance with the

17  Tribal–State Compact. 25 U.S.C. § 2710(d)(1)(C).

18         42.     Section 6.1 of the Tribal-State Compact requires that gaming activities comply

19  with "all rules, regulations, procedures, specifications, and standards duly adopted by the Tribal

20  Gaming Agency."  *See* Lewis Aff., Exhibit C., Tribal-State Compact, Section 6.1.

21         43.     Section 1.3 of the Tribal Gaming Ordinance requires that the Tribe must regulate

22  and control all gaming activity and further requires that all revenues must be used exclusively for

23  the benefit of the Tribe. Pursuant to Section 4.4 of the Ordinance, the Gaming Commission is a

24  governmental agency of the Tribe under the directive and control of the Tribal Council intended

25  to operate on behalf of the Tribe afor the sole benefit and interests of the Tribe.

26

27  _____
[3]  Other permissible purposes pursuant to IGRA include  donation to charitable organizations or; helping fund operations of local government agencies.  25 U.S.C. § 2710(d).

28

44.     Moreover, Section 6.1 of the Tribal Gaming Ordinance requires that all Casino gaming revenues must be deposited into the Casino's bank account.  Additionally, pursuant to Section 6.3.1 of the Ordinance, the Casino is required to complete annual independent audit.  *See* Lewis Aff., Exhibit B.

45.     On February 11, 2014, the Bureau of Indian Affairs, a federal agency of the United States Department of the Interior ("BIA"), issued a decision, recognizing the following persons as constituting the legitimate and authorized Tribal Council with whom the United States would maintain government to government relations:  Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez.  *See* Robert Rosette Affidavit, ECF No. 4 ("Rosette Aff.") at ¶ 5.   In issuing this decision, the United States recognized that "the dispute over the Tribe's leadership has led to multiple financial hardships including reported defaults on loans connected with the Tribe's gaming facility.  In addition, many Federal agencies have been unable to determine with whom to conduct business amidst the dispute, causing essential Tribal programs that are funded by the Federal government to cease operation . . . Due to these increasing issues, there appears to be several grounds for finding it would be in the public interest to put this decision into immediate effect."  ("BIA Decision").  A true and correct copy of the BIA Decision is attached as Exhibit A to the Rosette Aff.

46.     The February 11, 2014 BIA Decision issued after the Ayala Faction and Chairman Lewis had both submitted their own separate contracting requests and their extensive written briefs with supporting evidence explaining why the BIA should recognize them as eligible by the Secretary for the special programs and services provided by the United States to Indians.  The Ayala Faction was permitted to make any and all pertinent arguments and to present any relevant evidence in support of their claim that they are the legitimate governing body of the Tribe.  Yet, despite their thorough briefing, the BIA refused to recognize them.  *See* Rosette Aff., Ex. A., BIA Decision at 2-3.

47.     The BIA Decision refusing to recognize the Ayala Faction is consistent with the decisions of other federal agencies.  For example, on May 30, 2013, the United States Department

of Housing and Urban Development refused to recognize the Ayala Faction as the governing body of the Tribe, and accordingly blocked their access to the HUD Line of Credit Control System. *See* Lewis Aff., Ex. G, HUD Letter dated May 30, 2013. On July 25, 2013, the United States Environmental Protection Agency also refused to recognize the Ayala Faction, denying to them funds that a legitimate tribal government would be entitled to under the Clean Water Act and Clean Air Act. *See* Lewis Aff., Ex. H, EPA Letter. Likewise, on September 18, 2013, the Institute of Museum and Library Services denied the Ayala Faction's requests for project funding. *See* Lewis Aff., Ex. I, Institute of Museum and Library Services Letter.

48.     On February 19, 2014, and citing the exigent circumstances that the BIA had referenced in its February 11, 2014 letter as well as the alleged concern that "immediately following the Regional Director's issuance of [the United States Decision], counsel for the Ayala Faction communicated his concern that any attempt by the Tribal Council recognized in the [United States Decision] to resume control of the Tribal Offices and/or Casino could possibly *result in murder*," the BIA filed its Request to Make February 11, 2014 Decision Effective Immediately with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Indian Appeals ("United States Request"). A true and correct copy of the United States Request is attached as Exhibit B to the Rosette Aff.

49.     Throughout all of its filings before the BIA, Defendants have failed, entirely, to produce even one single document that states that the Ayala Faction has any federally-recognized authority to make any decisions for, or exercise any authority over and on behalf of, the Tribe, its Departments and economic enterprises, and its members. In fact, the United States Department of Housing and Urban Development, the United States Environmental Protection Agency, and now the BIA have all clearly stated that they would not allow the Ayala Faction to have access to the resources allocated to the Tribe on behalf of its members because those resources are reserved for the leadership that the BIA has recognized as eligible for the special programs and services provided by the United States to Indians and the Ayala Faction cannot exercise such recognition. *See* Lewis Aff., Exs. G, H, I.

50.     Regardless of any challenges which have or may be raised with regard to the United States Decision, it is and remains the **_only_** position that has been articulated by the United States regarding the Tribe's legitimate governing body at this time.  Moreover, the exigent circumstances cited by the United States in its Decision and now in its United States Request are many of the same exigent circumstances that compel issuance of the relief sought through this action.  *See* Rosette Aff. ¶5.

51.     Most recently, Defendants have refused to acknowledge and adhere to the directives of the United States-Recognized Tribal Council.  Lewis Aff. at ¶ 18.

52.     Defendants have and will continue to exercise physical control over the Casino and Casino revenues and will continue to make unlawful payments of Casino funds intended for the Tribal government to persons or entities that are not the United States-Recognized Tribal Council, all in violation of law governing the Tribe's class III gaming operations at the Casino. *See* Lewis Aff. at ¶ 25.

53.     Specifically, on February 13, 2014, Defendant Markle used Casino Revenues in attempting to make (and likely successfully making), a cash payment totaling $316,700 to an unauthorized entity acting at the direction of a rogue group that has never been recognized by the United States Government.  *See* Lewis Aff. at ¶ 20.

54.     Defendants cannot show that their physical control over the Casino and Casino revenues are exercised on behalf of an Indian tribe as that term has been defined under the IGRA. *See*  25 U.S.C. § 2703(5); 25 U.S.C. § 2710(b)(2)(A).

55.     Defendants will likely continue to authorize and make unlawful distributions of Casino revenues to persons and entities that are not recognized by the United States as the Tribe entitled to conduct class III gaming operations under IGRA.  *See* Lewis Aff. at ¶ 25.

56.     Despite knowing that they are not acting as, or on behalf of, or disbursing Casino revenue to persons and entities  that constitute an Indian tribe as defined under IGRA, Defendants have and will continue to act in explicit contravention with this fundamental requirement of IGRA. *See* 25 U.S.C. § 2703(5); 25 U.S.C. § 2710(b)(2)(A).

57.     Unless Defendants are enjoined from exercising physical control over the Casino or its revenues and also enjoined from issuing payments of Casino funds intended for the Tribal government, in violation of Tribal and federal law to persons or entities that are not recognized by the United States as the Tribe, Plaintiffs will lose the assets of the Tribe to an unrecognized entity and, once disbursed, those assets cannot be recovered.  Lewis Aff. at ¶ 26.

**FIRST CAUSE OF ACTION**

**(ALL DEFENDANTS)**
**Injunctive Relief – IGRA**
**(Violation of IGRA and Tribal–State Compact Because Defendants Are Not a Federally Recognized Indian Tribe and are not Acting on Behalf of a Federally Recognized Indian Tribe)**

58.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 57 above.

59.     IGRA was passed in order to provide "a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments" and "to shield [tribal gaming] from organized crime and other corrupting influences to *ensure that the Indian tribe is the primary beneficiary of the gaming operation."* *Artichoke Joe's California Grand Casino v.* Norton, 353 F.3d 712, 715 (9th Cir. 2003). (emphasis added).

60.     Under IGRA, the term  "Indian tribe" means any Indian tribe, band, nation, or other organized group or community of Indians which, " *is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians* because of their status as Indians, and is recognized as possessing powers of self-government. 25 U.S.C. § 2703(5).  (emphasis added).  The term "Secretary" means the Secretary of the United States Department of the Interior.   25 U.S.C. § 2703(10).   The Secretary of the Interior has delegated his authority to recognize Indian tribes that are eligible for special programs and services to the Assistant Secretary of the United States Bureau of Indian Affairs (hereafter simply referred to as "Secretary").  *See* 25 U.S.C. §§ 1, 1(a), and (2); 43 U.S.C. § 1457.

…

61.     In her February 11, 2014 BIA Decision, again issued after the Ayala Faction and Chairman Lewis had both submitted their own separate contracting requests and their extensive written briefs with supporting evidence explaining why the BIA should recognize them as eligible by the Secretary for the special programs and services provided by the United States to Indians, BIA Pacific Region Director Amy Dutschke stated that as to Plaintiffs, and not as to the Ayala Faction, she was extending the government-to-government relationship in which the BIA is required to engage in order that it may provide the special programs and services that the United States owes to the Tribe.   Regional Director Dutschke's recognition therefore recognizes the Plaintiffs, and not the Ayala Faction, as an Indian Tribe.     *See* BIA Decision at 2-3, 7; 25 U.S.C. § 2703(5).

62.     Any Tribe that decides to engage in gaming pursuant to IGRA must comply with IGRA's requirements.  *See Sac & Fox*, 340 F.3d at 749, holding that "[a]ny tribe which elects to reap the benefits of gaming authority created by the IGRA must comply with the IGRA's requirements."

63.     IGRA requires that all gaming and activities relating thereto must be conducted in conformance with the Tribal-State Compact and the Tribal Gaming Ordinance.  § 2710(d)(1); *see also Sac & Fox Tribe of Mississippi in Iowa v. United* States, 264 F. Supp. 2d 830, 840 (N.D. Iowa 2003).

64.     The Compact between the Tribe and the State of California requires compliance with various sources of Tribal law.  Specifically, it provides: "All Gaming Activities conducted under this Gaming Compact shall, at a minimum, comply with *a Gaming Ordinance duly adopted by the Tribe and approved in accordance with IGRA*, and with all rules, regulations, procedures, specifications, and standards duly adopted by the Tribal Gaming Agency."  *See* Lewis Aff., Ex. C., Tribal-State Compact, § 6.1. (emphasis added).

65.     The Gaming Ordinance mandates that "Gaming is regulated and controlled by the Tribe pursuant to the Compact, authorized by the IGRA, and the Net Revenues received by the …

Rosette, LLP
193 Blue Ravine Road
Suite 255
Folsom, California 95630

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

Tribe from Gaming are used *exclusively* for the benefit of the Tribe." *See* Lewis Aff., Ex. B, Tribal Gaming Ordinance at §1.3.2 (emphasis added).

66.     Defendants Tan, Markle, and King, as Casino management, and Defendants Eckstein, Joseph Ayala, Atkins, Ramirez, Works, and Chhom should be well-aware that Class III gaming is legally *authorized only when an Indian Tribe conducts the gaming*. "Indian Tribe" is defined as "any Indian tribe, band, nation, or other organized group or community of Indians which, *is recognized as eligible by the Secretary for the special programs and services provided by the United States to Indians* because of their status as Indians, and is recognized as possessing powers of self-government." 25 U.S.C. § 2703(5) (emphasis added).  Defendants Tan, Markle, King, Eckstein, Joseph Ayala, Atkins, Ramirez, Works, and Chhom are currently facilitating operation of the Casino on behalf of persons and entities who have not been recognized by the United States as the Tribe.

67.     The BIA Decision highlighted that the United States will recognize Plaintiffs as the Tribe's leadership until "such time the [leadership] issue is resolved in accordance with the Tribe's laws." *See* Rosette Aff., Ex. A.

68.     Because Defendants are not currently recognized by the United States, their occupation and control of the Casino and disbursement of Casino revenues is in violation of IGRA.  Moreover, Defendants will likely continue to engage in Class III gaming in violation of applicable law, to include unlawful disbursement of the Tribe's Casino revenues in violation of the requirements of IGRA, 25 U.S.C. § 2710(d).

69.     Defendants' unlawful disbursement of Casino revenues to persons or entities not recognized by the United States as the Tribe will harm the Tribe because those disbursements will be illegal and cannot be reasonably recovered.

70.     IGRA's purpose is to benefit the "recognized" Indian tribe.  *See Artichoke Joes*, 353 F.3d at 715.

71.     IGRA explicitly provides that a district court may enjoin gaming activity conducted in violation of the applicable Tribal–State Compact.  25 U.S.C. § 2710(d)(7)(A)(ii).

"The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Antoninetti*, 643 F.3d at 1176. Specifically, the Court is not required to inquire into the third and fourth *Winter* factors. *Id*. IGRA is precisely this type a statute, in that it explicitly provides that a district court may enjoin gaming activity conducted in violation of the applicable Tribal–State Compact. 25 U.S.C. § 2710(d)(7)(A)(ii).

72. As a result of the foregoing, Plaintiffs are entitled to injunctive relief ordering Defendants to surrender physical control of the Casino and its revenues.

**SECOND CAUSE OF ACTION**
**(ALL DEFNDANTS)**
**Injunctive Relief – IGRA**
**(Direct Violation of IGRA Because Defendants Are Engaged in Illegal Gaming Activity )**

73. Plaintiffs reallege and incorporate by reference paragraphs 1 through 72 above.

74. Under IGRA only a federally recognized tribe or tribal entity may operate, regulate, and have the sole proprietary interest in a tribe's gaming facility, *See* 25 U.S.C. §2710(b)(2)(A), and all Class III gaming shall be lawful *only if* "conducted in conformance with a Tribal-State Compact. . .." *See* 25 U.S.C. § 2710 (d)(1)(C).

75. IGRA expressly provides jurisdiction for district courts to enjoin a class III gaming activity conducted in violation of any Tribal-State Compact. 25 U.S.C. § 2710(d)(7)(A)(ii). *See also Sac & Fox*, 340 F. 3d at 763, wherein the Eighth Circuit held that the district court erred when it failed to address an Indian tribe's claim brought to "enjoin, among other things, illegal gaming under 25 U.S.C. § 2710(d)(7)(A)(ii)".

76. Section 7.1 of the Tribal-State Compact states that "it is the responsibility of the Tribal Gaming Agency to conduct on-site gaming regulation and control in order to enforce the terms of this Gaming Compact, IGRA . . . ." Defendants, who have no federal document or statement proving that they are indeed an Indian Tribe authorized to engage in gaming activity as defined under 25 U.S.C. 2703(5), are nonetheless occupying the physical structures of the Casino (which contains Class III gaming devices), controlling the Class III gaming activity at the Casino,

and controlling and disbursing revenue generated at the Casino, through its Class III gaming activities.  *See* Lewis Aff. at ¶ 25.  All of this is occurring despite the fact that Plaintiffs, as the Indian Tribe defined under IGRA, are not occupying the physical structures of the Casino (which contains Class III gaming devices), controlling the Class III gaming activity at the Casino, and controlling and disbursing revenue generated at the Casino.  *See* Lewis Aff., Ex. C., Tribal-State Compact, Section 7.1.

77.     Defendants are preventing the Plaintiffs—the Indian Tribe as defined under IGRA and the United States-Recognized Tribal Council—from operating the Tribe's Casino, a violation of Section 6.2 of the Compact which requires that the Tribe shall have ownership, management, and control of the gaming operations.  *See* Lewis Aff., Ex. C.

78.     Plaintiffs' requested injunction is essential to prevent Defendants from committing irreparable harm through their illegal acts, *see* Lewis Aff., Exs L, M, and N, and thereby benefitting themselves and any person or entity that is not the United States-Recognized Tribal Council. The balance of equities favors the  Plaintiffs because they are merely trying to lawfully operate the Casino and prevent the  Defendants' illegal acts.

79.     As a result of the foregoing, Plaintiffs are entitled to injunctive relief ordering Defendants to surrender physical control of the Casino and its revenues.

### THIRD CAUSE OF ACTION
### (DEFENDANTS TAN, MARKLE, KING, and ATKINS)
### Breach of Fiduciary Duty

80.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 79 above.

81.     Under the doctrine of complete preemption, claims such as breach of fiduciary duty are considered to be converted into federal causes of action when there is a federal statute of "extraordinary" preemptive force.   *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993).  The IGRA has been determined to be a federal statute with such extraordinary preemptive force. *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996).

…

82.     As the Casino's General Manager, General Accounting Manager, Chief Financial Officer, and Director of Security, Defendants have fiduciary responsibility to properly manage and oversee the Casino's resources, the trust corpus, for the benefit of the Tribe, through its Tribal Council.  Justice Benjamin N. Cardozo succinctly captured this duty, writing "many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions . . ..  Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.  It will not consciously be lowered by any judgment of this court." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (N.Y. 1928) (citations omitted).

83.     In their role as fiduciaries for the Casino, Defendants Tan, Markle, King and Atkins ("Casino Management Defendants" and Casino Security) are responsible for ensuring that the Casino's assets are protected and properly disbursed, with those disbursements being made in accordance with Tribal law.

84.     Defendants are aware that on February 11, 2014, the BIA issued its decision recognizing members of the legitimate and authorized Tribal Council with whom the United States would maintain government-to-government relations and could ascertain from that decision that they were not the Tribal Council nor did they work for the Tribal Council so recognized. Rosette Aff., Ex. A.

85.     On February 13, 2014, Defendant Markle used Casino Revenues in attempting to make (and likely successfully making), a cash payment totaling $316,700 to an unauthorized entity acting at the direction of a rogue group that has never been recognized by the United States Government.  Casino Management Defendants' illegal disbursement of Casino revenue breached their fiduciary duty to the Tribe, the Casino, and the General Council, and the regulatory standards

that the NIGC is charged to enforce and oversee relative to and for the Casino.  See Lewis Aff. at ¶ 20.

86.     Casino Management Defendants' illegal disbursement of Casino revenue to persons and entities who are not recognized by the United States as the Tribe, is a substantial factor in causing continuing harm to Plaintiffs, and Plaintiffs are entitled to injunctive relief restraining Defendants from exercising any physical control over the Casino and its Class III gaming operations and related revenues and authorizing and making further illegal disbursements of  Casino revenue to any person or entity is not the United States-Recognized Tribal Council. Moreover, Plaintiffs are entitled to an award for damages resulting from Casino Management Defendants' conduct, the costs of this suit, including reasonable attorney's fees, and such other costs and further relief as this Court deems equitable and just.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

1.     Injunctive relief enjoining all Defendants, their attorneys, agents, and employees from taking any action, direct or indirect, in facilitation, cooperation, or otherwise, that would constitute Class III gaming activities in violation of the IGRA, the Tribal-State Compact, and the Tribal Gaming Ordinance, including an order that Defendants surrender physical control of the Casino and its revenues to the Indian Tribe entitled to engage in gambling activity as that term is defined within the IGRA.

2.     Declaratory relief finding that Defendants Tan, Markle, King, and Atkins have violated their fiduciary duty to the Tribe and its membership by engaging in Class III gaming activity on behalf of persons and entities who are not the Tribe as defined under the IGRA and who therefore have no legal right to direct or exercise physical control of the Casino and Casino revenue.

3.     Injunctive relief restraining Defendants Tan, Markle, King, and Atkins from exercising further illegal physical control of the Casino and control over the Casino's Class III gaming revenues, including any and all disbursement of such Casino revenues.

1    4.    An award for damages resulting from Defendants' conduct, the costs of this suit,

2 including reasonable attorney's fees, and such other costs and further relief as this Court deems

3 equitable and just.

4    5.    For such other costs and further relief as the Court deems equitable and just.

5

6

7 Dated: February 28, 2014                    RESPECTFULLY SUBMITTED,

8                                             ROSETTE, LLP

9                                             /s/ Robert A. Rosette
10                                            Robert A. Rosette
                                              Geoff Hash
11                                            193 Blue Ravine Rd., Suite 255
                                              Folsom, California 95630
12                                            Telephone: (916) 353-1084
                                              Facsimile: (916) 353-1085
13
                                              Attorneys for Plaintiffs
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28